40637. MIMS v. BOLAND et al.

DECIDED SEPTEMBER 11, 1964—REHEARING DENIED
OCTOBER 15, 1964.

*William G. McRae, G. Seals Aiken,* for plaintiff in error.
*Greene, Neely, Buckley & DeRieux, Ferdinand Buckley,* contra.

BELL, Presiding Judge. ■ In addition to numerous special grounds, the plaintiff in error excepts to the judgment of the trial court denying movant's motion for new trial on the general grounds. We have therefore carefully reviewed the evidence and from this have concluded that final disposition of this appeal must rest on the general grounds albeit in a fashion not contemplated by the appellant.

■ As declared by plaintiff's counsel, this case has its basis in assault and battery, not upon the theory of medical malpractice. Although the suit is against a physician and his laboratory technician for conduct within the scope of the relationship of a physician to his patient, its determination depends, not upon the principles applicable to actions for negligence or malpractice, but upon the rules relating to a suit for damages growing out of a trespass alleged to have been committed upon the person of the plaintiff. This form of action against medical practitioners has been recognized in *Perry v. Hodgson,* 168 Ga. 678 (148 SE 659) and in *Keen v. Coleman,* 67 Ga. App. 331 (20 SE2d 175).

The relation of physician and patient is a consensual one, and a physician who undertakes to treat another without express or implied consent of the patient is guilty of at least a technical battery. See 41 Am. Jur. 220, Physicians and Surgeons, §§ 107, 108. Generally, it is settled law that an unauthorized surgical operation by a physician upon the body of his patient is a wrongful and unlawful act for which the surgeon will be liable in damages. *Jeter v. Davis,* 33 Ga. App. 733, 741 (6) (127 SE 898). See: 13 Ga. B. J. 13, 20; Pratt v. Davis, 224 Ill. 300 (79 NE 562) where the plaintiff was not advised as to the extent of surgery to be performed, and thus, did not consent to surgery more radical than she expected; Mohr v. Williams, 95 Minn. 261 (104 NW 12) where plaintiff consented to an operation on her right ear, and the physician operated on the left ear instead; Schloendorff v. Society of New York Hospital, 211 N.Y. 125 (105 NE 92) where the physician operated over the patient's express prohibition of any surgery at all; Rolater v. Strain, 39 Okla. 572 (137 P 96) where the physician exceeded express prohibitions as to the nature and extent of the operation for which the patient had consented.

■

Most of the cases of battery of a patient by a physician have involved surgical operations. However, all of the cases of this and other jurisdictions, together with the general law governing assault and battery or trespass to the person, lead inescapably to the conclusion that any unauthorized and unprivileged contact by a doctor with his patient in examination, treatment or surgery would amount to a battery. In the interest of one's general right of inviolability of his person, any unlawful touching of that type is a physical injury to the person and is actionable.

In the relationship of doctor and patient, as in other situations involving a touching of another's person, consent to the act by the person affected negates the contact as an actionable tort. "As a general rule there can be no tort committed against a person consenting thereto, if that consent is free and not obtained by fraud, and is the action of a sound mind." *Code* § 105-1803. *Byfield v. Candler*, 33 Ga. App. 275 (125 SE 905). Consent to medical or surgical treatment may be manifest by acts and conduct, and need not necessarily be shown by writing or by express words. Kritzer v. Criton, 101 Cal. App. 2d 33 (224 P2d 808). It may be implied from voluntary submission to treatment with full knowledge of what is going on. Baxter v. Snow, 78 Utah 217 (2 P2d 257).

The evidence in this case discloses that plaintiff had committed herself to Dr. Boland's care, and had been under his care for a number of years, apparently to the mutual satisfaction of doctor and patient and with previously good results. It was through her initiative that the appointment of August 19, 1959, was arranged, and manifestly there was express general consent to an examination. Although she testified that she thought that she was to be administered the barium orally as on previous occasions, yet none of her testimony, nor that of any other witness, is subject to the inference that her consent to the examination did not extend to and include the enema when she discovered that the barium was to be administered by enema and not orally. In absence of this inference no jury question was presented on the issue of consent and the evidence demanded a finding that she did consent to the enema. In this circumstance there could be no actionable assault and battery because of the use of that technique.

■ .With respect to consent the evidence in this case presents another and unusual question for consideration, i.e., whether after treatment or examination has begun, the patient's consent previously given may be withdrawn so as to subject the doctor to liability for assault and battery if the treatment or examination is continued. After exhaustive research we have found no reported precedent in this or any other jurisdiction to guide us in this area.

In the interest of the individual's right of freedom from unwanted contacts and invasions upon his body, we can not go so far as to say that once the examination or treatment has begun with the patient's consent the patient can in no event and by no means withdraw his approval. On the contrary even after the treatment or examination is underway we wish to emphasize that consent once given can be withdrawn sufficiently to subject a doctor to suit for assault and battery if he continues the contact, provided however the physician's withdrawal under the medical circumstances then existing would not endanger the life or health of the patient. This presents a medical question.

It is difficult to set a standard to govern the doctor's conduct where the patient protests in the midst of treatment or examination. If the doctor should desist in midstream, so to speak, it might forfeit the patient's life or well-being and might result in the doctor's liability for malpractice or indictment for some criminal offense or might bring upon him the reproach and condemnation of his own profession. These possibilities of accusal should not be left to chance, so a standard must be devised to regulate conduct in this scope of activity.

To constitute an effective withdrawal of consent as a matter of law after treatment or examination is in progress commensurate to subject medical practitioners to liability for assault and battery if treatment or examination is continued, two distinct things are required: (1) The patient must act or use language which can be subject to no other inference and which must be unquestioned responses from a clear and rational mind. These actions and utterances of the patient must be such as to leave no room for doubt in the minds of reasonable men that in view of all the circumstances consent was actually withdrawn.

(2) When medical treatments or examinations occurring with the patient's consent are proceeding in a manner requiring bodily contact by the physician with the patient and consent to the contact is revoked, it must be medically feasible for the doctor to desist in the treatment or examination at that point without the cessation being detrimental to the patient's health or life from a medical viewpoint.

The burden of proving each of these essential conditions is upon the plaintiff, and with regard to the second condition, it can only be proved by medical evidence as medical questions are involved.

To permit a lesser standard would be to subject the medical profession to an endless possibility of harrassment and would place upon them a potential of punishment in every case where their examination or treatment results in less than complete success. The possibility of irresponsible harrassment is something the medical profession should not be called upon to bear, dealing as it does with human life and human frailty.

The evidence in this case falls far short of meeting either of the two essential criteria. The testimony of the plaintiff herself offers nothing to show a revocation of her consent within the meaning of the first condition. Her strongest testimony even remotely approaching the point is as follows:

"When [defendant Woolley] . . . started giving me the enema he was going to insert [the bardex catheter tube] . . . into the colostomy and I told him, 'Better let me insert that tube because I am in the habit of taking an enema and I know how to insert these rubber tubes without hurting, because there is such a crook in the colostomy, it has to go part one way and then has to be turned, because it can't go just right straight down.'

"He said, 'No, you don't know how to do it,' and he continued with this thing, and I tried to take it out of his hand and he wouldn't let me have it. He said, 'No, you can't do it.'

"So with that he shoved that thing right into my colostomy and right on in and just nearly killed me.

"And then when he started pouring that barium into that tube that had been inserted, he poured so much I said, 'Dr. Woolley, I can't take all of the barium because I don't have but a very small part of my large colon,' and of course he didn't know anything about what I had had done and he still kept giving me more.

"I said, 'That is just all I can take. It's just killing me,' and I just kept getting very, very terrible pains and suffering terrible all the time he was giving it to me. . .

"I was in such intense pain and that I didn't think I could stand it and I just kept begging both of them [defendant Woolley and Dr. Pilcher] not to give me any more of it. . .

"Oh I just suffered terrible, I suffered torture, started into just rigors and just shaking, and they had to hold me on the table. . ."

This testimony merely shows protestations by the plaintiff of pain and discomfort and disagreement with the defendants in the manner they administered the barium enema. That is not enough.

Even had the first essential been met (which we have held was not the case), then the suit would fail nevertheless because the second essential was not proven. There is no medical testimony in the record by any doctor showing that it would have been medically feasible for the defendants to have desisted in the barium enema at any stage of the examination.

The evidence demanded a finding that there was no revocation of consent and continuation of the examination by means of the barium enema did not constitute an assault and battery.

The evidence having demanded a verdict for the defendant, the judgment is affirmed on the general grounds.

It is not necessary for us to consider the numerous special grounds as the judgment here constitutes a final determination of the cause and no retrial will occur.

*Judgment affirmed on the general grounds. Jordan and Eberhardt, JJ., concur.*