## A89A2284. WILLIAMS v. LEMON.
### (390 SE2d 89)

SOGNIER, Judge.

Rodman Lemon, M.D., filed suit against Susan Williams for malicious prosecution after he was tried and acquitted on a criminal charge of simple battery Williams had brought against him. Williams answered and counterclaimed for the civil torts of battery and intentional infliction of emotional distress. The case was tried before a jury, and at the close of the evidence the trial court granted Lemon's motion for directed verdict as to Williams' counterclaim. The trial court denied Lemon's motion for a directed verdict as to his own claim, whereupon Lemon voluntarily dismissed his petition without prejudice. Williams appeals pro se.

1. The motion to dismiss the appeal is denied. Although the notice of appeal was filed prior to the entry of final judgment in this case, "[t]he rule now is that if the notice is sufficient to advise the opposing party that an appeal is being taken from a specific judgment, and if no prejudice will result to the appellee in allowing the appeal, then the appeal should not be dismissed merely because the notice was premature. In this case, there can be no mistake as to what judgment was being appealed, and it is inconceivable that any prejudice was caused the appellee when the notice was filed [one week after trial of the issue although nearly three months before the judgment was filed.]" *Kenerly v. Yancey,* 144 Ga. App. 295, 296 (1) (241 SE2d 28) (1977).

2. Appellant contends the trial court erred by granting appellee's motion for directed verdict on her counterclaim for battery. Appellant contends that during the course of a gynecological examination by appellee, his touching exceeded the contact to which appellant had consented. Appellant testified that appellee had been her gynecologist for five years when the incident occurred. She stated that after the nurse departed from the examination room, appellee talked to her about her retroverted uterus, telling her she needed to do exercises to strengthen it. Appellant testified that when she asked appellee what type of exercises she needed to do, appellee examined her breasts "not the way he normally [did] it," patted her several places while telling her she needed to tone up those areas, then had appellant bend over, at which time appellant stated appellee inserted his fingers into her vagina and asked her to move back and forth. When appel-

lant inquired what he was trying to do, appellee told her he was "trying to get your uterus to flip back . . . forward where it should be." Appellant testified that appellee did not wear gloves when he conducted part of the examination, although she did not specify which part. Appellant also testified that after she got up, appellee looked her in the face and approached her "as if . . . to kiss me, as I felt." No contact occurred and appellant left.

The only other testimony presented at trial was by appellee, who stated that he was an obstetrician-gynecologist, that he conducted a routine follow-up examination of appellant after the birth of her first child, that nothing unusual occurred during the exam, and on cross-examination stated that he did not remember any of the details outlined above.

"The relation of physician and patient is a consensual one . . . . However, all of the cases of this and other jurisdictions . . . lead inescapably to the conclusion that any unauthorized and unprivileged contact by a doctor with his patient in examination, treatment or surgery would amount to a battery. In the interest of one's general right of inviolability of his person, any unlawful touching of that type is a physical injury to the person and is actionable." *Mims v. Boland*, 110 Ga. App. 477, 481, 482 (1a) (138 SE2d 902) (1964). However, the court in *Mims* goes on to note that in relationships of doctor and patient, "as in other situations involving a touching of another's person, consent to the act by the person affected negates the contact as an actionable tort." Id. at 482. *Mims* then sets forth the standard to regulate conduct in this scope of activity where the patient, once treatment or examination has begun, thereafter withdraws the previously given consent. "To constitute an effective withdrawal of consent as a matter of law after treatment or examination is in progress commensurate to subject medical practitioners to liability for assault and battery if treatment or examination is continued, two distinct things are required: (1) The patient must act or use language which can be subject to no other inference and which must be unquestioned responses from a clear and rational mind. These actions and utterances of the patient must be such as to leave no room for doubt in the minds of reasonable men that in view of all the circumstances consent was actually withdrawn. (2) When medical treatments or examinations occurring with the patient's consent are proceeding in a manner requiring bodily contact by the physician with the patient and consent to the contact is revoked, it must be medically feasible for the doctor to desist in the treatment or examination at that point without the cessation being detrimental to the patient's health or life from a medical viewpoint. The burden of proving each of these essential conditions is upon the plaintiff . . . ." Id. at 483-484.

Appellant is not alleging that appellee committed medical mal-

practice: she presented no expert evidence to rebut appellee's testimony, as a physician specializing in obstetrics and gynecology, that his examination of her was routine gynecological procedure, and adduced no proof that appellee varied from the requisite standard of care. See generally *Savannah Valley &c. Assn. v. Cheek*, 248 Ga. 745, 747 (285 SE2d 689) (1982). Although appellee testified it was proper for a physician to wear gloves when touching a patient's orifices, there was no evidence that appellee's non-use of gloves, as testified to by appellant, occurred during his contact with her vagina. Similarly, appellant presented no evidence of standard medical practice regarding the presence of a nurse or other personnel during gynecological examinations. Thus, no question is raised here whether any of appellee's alleged acts in touching appellant's body during the incident in question were outside the scope of a medically proper gynecological examination so as to constitute unauthorized and unprivileged contact exceeding the touching to which appellant had consented. Rather, appellant's counterclaim is based on her assertion that appellee, in the guise of conducting a proper examination, abandoned his physician's role and used the examination as an excuse to touch intimate areas of appellant's body in a manner medically correct but for non-professional reasons and in a manner to which she had not consented.

As noted in *Mims*, supra, unauthorized touching constitutes actionable battery. See also *Stover v. Atchley*, 189 Ga. App. 56, 57 (2) (374 SE2d 775) (1988). Appellant, however, authorized appellee to touch her body for purposes of a gynecological examination and presented no evidence that the touching exceeded accepted medical techniques. No evidence of statements or overt actions taken by appellee indicating abandonment of the physician's professional status was introduced at trial: appellant herself testified that appellee's statements to her were strictly medical in nature; she presented no evidence that the "different" manner with which appellee touched her breasts was not an acceptable and customary method employed by gynecologists generally; and although appellant believed appellee intended to kiss her after the touching was over, no question exists that he did not actually do so. In view of the evidence in this case, we need not here determine whether in a battery suit a question for jury determination arises where there is evidence by statement or overt act that a physician during a routine examination has deliberately and intentionally sought to arouse or satisfy the sexual desires of either the physician or the patient by touching the patient in an otherwise proper medical manner. Nor need we decide whether the patient's consent to proper medical contact must be revoked pursuant to *Mims* guidelines under such circumstances.

The evidence at trial thus discloses that appellant consented to be touched; that in the course of a properly conducted medical exami-

nation, with no overt actions or statements by appellee to the contrary, appellant came to believe the touching was not for medical purposes but for appellee's own gratification; and that appellant did not revoke her consent to the touching. Since the evidence introduced demanded a finding that the touching was within the scope of contact to which appellant had consented and no evidence of statements or overt acts was adduced at trial from which a trier of fact could find that the touching was undertaken not for proper medical purposes but for the improper purpose of gratifying appellee's sexual desires, we find that under *Mims* appellant was required to withdraw the consent she had given to the touching to maintain a cause of action for battery. "To permit a lesser standard would be to subject the medical profession to an endless possibility of harassment . . . . The possibility of irresponsible harassment is something the medical profession should not be called upon to bear, dealing as it does with human life and human frailty." *Mims*, supra at 484.

The evidence at trial falls far short of meeting the first criterion in *Mims*. Although appellant explained to the jury her feelings of confusion and distress over the alleged unauthorized contact, it is uncontroverted that at no time did she communicate these feelings to appellee or take any action to revoke in an effective manner her consent to the touching. "If there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed." OCGA § 9-11-50 (a). There being no evidence of an effective revocation of consent by appellant to appellee's touching, the direction of the verdict in favor of appellee on appellant's counterclaim is affirmed. *Mims*, supra at 485. See generally *Dependable Equip. &c. Co. v. Nursecare of Atlanta*, 184 Ga. App. 136, 137 (1) (361 SE2d 23) (1987).

3. Appellant enumerates as error the trial court's exclusion of what was purported at trial to be a certified copy of appellee's prior convictions for battery. However, the transcript reveals that after the trial court refused to admit the document, appellant failed to tender it into evidence in order to perfect the record on appeal. "Since this is a court for correction of errors of law, our decision must be made upon the record and not upon briefs of counsel. [Cits.]" *Doster v. Central of Ga. R. Co.*, 177 Ga. App. 393, 400 (8) (339 SE2d 619) (1985). Where there is nothing in the record to support the contention of error, there is nothing presented to this court for review. *Brookhaven Assoc. v. DeKalb County*, 187 Ga. App. 749, 750-751 (371 SE2d 231) (1988).

4. Appellant contends the trial court erred by refusing to allow her to recall appellee to the stand after appellant had rested her case. "It is within the discretion of the trial court to allow a case to be

*v. Traditional Bldrs.*, 183 Ga. App. 709, 711 (4) (359 SE2d 719) (1987). We find no abuse of discretion here.

5. Appellant's final enumeration is that the trial court prejudiced her case to the jury by commenting on appellant's pro se status in remarks appellant stated were primarily "off the record." Appellant's brief cannot be used in lieu of the record or transcript to add evidence to the record. *Howell Mill &c. v. Gonzales*, 186 Ga. App. 909, 911 (368 SE2d 831) (1988). Further, to warrant reversal, the alleged error must be harmful. *Whitehead v. Cogar*, 180 Ga. App. 812, 813 (1) (350 SE2d 821) (1986). Since appellant's counterclaim did not go to the jury, she has failed to show how the trial court's remarks overheard by the jury could have harmed her. We find no merit in this enumeration.

*Judgment affirmed. Banke, P. J., and Pope, J., concur.*

DECIDED JANUARY 4, 1990 —
REHEARING DENIED JANUARY 17, 1990.

Susan Williams, *pro se.*
Herbert E. Kernaghan, Jr., Barry H. Bolgla, for appellee.