A05A2012. PRINCE v. ESPOSITO et al.
(628 SE2d 601)

RUFFIN, Chief Judge.

Jeffrey Prince sued Dr. Joseph Esposito and Health Plus, P.C. d/b/a Health Plus Chiropractic Center ("Health Plus"),[1] alleging that Esposito committed battery against him during chiropractic treatment at Health Plus. Esposito and Health Plus moved for summary judgment, and the trial court granted the motion. For reasons that follow, we affirm.

1. Summary judgment is appropriate when the evidence, construed favorably to the nonmoving party, demonstrates that no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law.[2] Viewed in this manner, the record shows that Esposito began treating Prince for back pain in 1989, performing numerous chiropractic "adjustments" on the vertebrae in Prince's back. On May 14, 2001, Prince went to Esposito's office to obtain a " 'free birthday adjustment' " offered by Esposito. Although Prince felt fine and had not sought treatment for approximately seven months, he decided to take advantage of Esposito's offer for "maintenance" purposes.

When Esposito entered the examining room, Prince noticed that his demeanor was "cold" and not as "jovial" as usual. Esposito placed his hands on Prince's lower back, and Prince stated that he was there for his free adjustment. At that point, Esposito "pushed down as hard as he could to the point where [Prince's] arms and legs almost came

---

[1] Prince subsequently added Health Plus Wellness Centers, LLC, as a party defendant. According to Prince, Health Plus Wellness Centers, LLC, along with Health Plus, P.C., operates the clinic where he was treated. For ease of discussion, any reference in this opinion to "Health Plus" will include Health Plus Wellness Centers, LLC.

[2] See *Resnick v. Meybohm Realty*, 269 Ga. App. 486, 487 (604 SE2d 536) (2004).

off the table." According to Prince, the adjustment was not "normal" and caused him significant pain. After the adjustment, Esposito's face was red, and he appeared "stern" and angry. Prince continued his treatment with electric stimulation therapy, then left the office without speaking to Esposito.

Still in pain six weeks later, Prince returned to Esposito's office to give Esposito a chance to fix the problem. Prince told Esposito that he had been injured during the prior visit. Although Esposito treated Prince, he did not perform a full adjustment, and Prince sought further treatment from other chiropractors and medical doctors.

Prince sued Esposito and Health Plus, asserting that Esposito intended to injure him by pushing down on his back in a manner that lacked therapeutic value. Prince claimed that Esposito acted intentionally, resulting in a battery, not that Esposito was negligent or committed malpractice.[3] Esposito and Health Plus moved for summary judgment, arguing, among other things, that Prince consented to the treatment and thus could not establish a battery. The trial court agreed and granted summary judgment. We find no error.

(a) "An action for battery arises in the medical context when a medical professional makes unauthorized contact with a patient during examination, treatment, or surgery."[4] A patient who consents to a medical touching, however, cannot sustain a battery claim.[5]

Although Prince admittedly consented to a chiropractic adjustment, he claims that Esposito's touching did not constitute an adjustment, exceeded the scope of consent, and thus became a battery. But Esposito testified that he performed an adjustment on May 14, 2001, aligning two vertebrae in Prince's back. He further testified that he did not accidentally "mis-adjust" or intentionally injure Prince. And other than broadly asserting that the May 14, 2001 adjustment differed from the "normal" adjustments he had previously received, Prince has not pointed to any evidence that Esposito performed a procedure other than an adjustment that day. Furthermore, despite claiming that he is "familiar" with chiropractic procedures, Prince — an industrial cleaner salesman — conceded that he does not "keep informed on how chiropractic work is supposed to be done."

Under these circumstances, we agree with the trial court that Prince consented to the touching at issue. Prince argues that he did

---

[3] Prince believes that Esposito was angry with him – and intended to hurt him – because he had not sought treatment for seven months, wanted a free adjustment, and refused to allow Esposito to bill his insurance company for the chiropractic visits, which Prince generally paid for in cash.

[4] *King v. Dodge County Hosp. Auth.*, 274 Ga. App. 44, 45 (616 SE2d 835) (2005).

[5] See *Williams v. Lemon*, 194 Ga. App. 249, 250 (2) (390 SE2d 89) (1990).

not authorize the "forceful push" on his back that allegedly caused injury. Yet, he presented no evidence that Esposito's touching exceeded the scope of a chiropractic adjustment, and he voluntarily submitted to such adjustment. It follows that Esposito's conduct fell within Prince's consent.[6]

(b) Alternatively, Prince argues that Esposito obtained consent fraudulently. To support this claim, Prince asserts that: (1) Esposito induced him to seek continued chiropractic treatment by falsely diagnosing him with scoliosis, or curvature of the spine; (2) although Prince relied on Esposito to act professionally, Esposito harbored private animosity toward Prince such that Esposito knew he could not perform a proper adjustment; (3) Esposito assured Prince that obtaining adjustments over a long period of time would not cause harm; and (4) Esposito had previously committed battery on someone else, a fact which he "concealed" from Prince.

A medical professional who fraudulently obtains consent for a touching can be held liable for battery.[7] But to establish such fraud, a plaintiff "must produce evidence showing a willful misrepresentation of a material fact, made to induce the plaintiff to act, upon which the plaintiff acts to his injury."[8] Prince has not met this burden here. Although he testified that various medical doctors "laughed" when he told them about Esposito's scoliosis diagnosis, Prince presented no competent, nonhearsay evidence that Esposito misrepresented his condition or that he did not, in fact, suffer from curvature of the spine.[9] And aside from rank speculation about Esposito's mind-set and motives during the May 14, 2001 treatment,[10] Prince has not pointed to any evidence that Esposito actually harbored animosity toward Prince or knew that such animosity would prevent him from providing proper chiropractic care.[11]

Similarly, the record contains no evidence that Esposito misrepresented the effects of long-term chiropractic care. Prince argues on

---

[6] See id. at 251-252; Bowers v. Lee, 259 Ga. App. 382, 383 (1) (577 SE2d 9) (2003). Cf. Johnson v. Srivastava, 199 Ga. App. 696, 698-699 (2) (405 SE2d 725) (1991) (summary judgment on battery claim properly denied where issues of fact remained as to whether patient's consent for surgery encompassed the procedure actually performed by doctor).

[7] See Petzelt v. Tewes, 260 Ga. App. 802, 804 (1) (581 SE2d 345) (2003) ("[I]f a person consents to undergo a medical procedure, the physician cannot be liable for battery unless the consent was not freely obtained or was obtained by fraud.").

[8] (Punctuation omitted.) Id. at 805.

[9] See Harrell v. Fed. Nat. Payables, 264 Ga. App. 501, 504 (3) (591 SE2d 374) (2003) (" 'All hearsay evidence, unsupported conclusions, and the like, must be stricken or eliminated from consideration in a motion for summary judgment.' ").

[10] Esposito never told Prince that he was angry. Rather, Prince had the "impression" that Esposito felt resentment toward him.

[11] See Resnick, supra at 492 (3) (rank speculation cannot create a question of fact to defeat summary judgment).

appeal that because he suffered pain during the May 14, 2001 adjustment, an issue of fact remains as to whether Esposito falsely assured him about the safety of chiropractic adjustments. The evidence shows, however, that Prince was treated by Esposito for 12 years without significant problems and was pain-free when he took advantage of the birthday adjustment for "maintenance" purposes. Moreover, he has not offered competent evidence that long-term use of chiropractic treatments is unsafe or that Esposito knew of any safety risks. Under these circumstances, no reasonable jury could conclude that Esposito wilfully misrepresented the long-term effects of chiropractic treatment simply because Prince suffered pain during the May 14, 2001 adjustment.

Prince also has not established that Esposito committed fraud by concealing information about a prior battery claim. The record shows that, in 1991, a woman claimed that Esposito sexually battered her in his home. Prince presumably contends that if he had known about this claim, he would not have consented to treatment. But a medical professional has no duty to disclose negative information about his personal life to patients.[12] And absent direct evidence that the professional's personal situation impaired him at the time consent was obtained and treatment rendered, consent is not vitiated by the professional's failure "to disclose on his own initiative a negative personal life factor."[13] This is true, regardless of whether the patient testifies that he or she would have sought treatment elsewhere upon discovering the information.[14]

Prince has pointed to no direct evidence that Esposito was impaired — much less in a way relating to the alleged 1991 sexual battery — during the May 14, 2001 adjustment. His fraud allegation thus cannot survive summary judgment.[15]

(c) Prince also argues that questions of fact remain regarding withdrawal of consent. A patient may withdraw consent to medical treatment after the treatment has begun, and continued treatment following such withdrawal gives rise to a battery claim.[16] Our case law establishes clear standards for determining whether consent has been effectively withdrawn.[17] Those standards require that " '[t]he patient . . . act or use language which can be subject to no other inference . . . [and that] [t]hese actions and utterances . . . be such as

---

[12] See *Albany Urology Clinic v. Cleveland*, 272 Ga. 296, 299 (1) (528 SE2d 777) (2000).

[13] Id. at 301 (3).

[14] See id.

[15] See id.

[16] See *Williams*, supra at 250; *Mims v. Boland*, 110 Ga. App. 477, 483 (1) (b) (138 SE2d 902) (1964).

[17] See *Williams*, supra; *Mims*, supra at 483-484.

to leave no room for doubt in the minds of reasonable men that in view of all the circumstances consent was actually withdrawn.' "[18]

Prince did not ask Esposito to stop the May 14, 2001 adjustment or otherwise speak to him during the treatment. Prince simply "gasped, or expelled air," when Esposito pushed down on his lower back. Such gasp cannot reasonably be considered a withdrawal of consent.[19] Accordingly, the trial court properly rejected Prince's arguments relating to consent withdrawal.[20]

(d) On appeal, Prince suggests that Esposito acted unprofessionally. If the chiropractic adjustment Prince received fell below the standard of care, he could have brought a malpractice action. But he chose not to pursue such theory, alleging only that Esposito's conduct constituted battery. Given Prince's consent to the touching, the trial properly granted summary judgment to Esposito.

2. Prince claims that the trial court should have reconsidered its summary judgment ruling. As found in Division 1, however, the trial court correctly granted summary judgment in this case. We find no error, therefore, in the trial court's refusal to reconsider its ruling.[21]

3. After due consideration, Esposito and Health Plus' request that we impose frivolous appeal sanctions against Prince is hereby denied.

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED FEBRUARY 28, 2006 —
RECONSIDERATION DENIED MARCH 21, 2006 — 

*Weinstock & Scavo, John B. Levy*, for appellant.
*Bryman, Clerke & Kent, David N. Bryman*, for appellees.

---

[18] *Williams*, supra.

[19] See *Mims*, supra at 485 (withdrawal of consent not shown by mere "protestations by the [patient] of pain and discomfort and disagreement with [the medical professionals] in the manner they administered the [treatment]").

[20] Like the trial court, we find no merit in Prince's novel – and unsupported – alternative claim that he should not have to establish a withdrawal here because he did not realize that Esposito planned to push so hard on his back and thus had no opportunity to object to "the blow."

[21] See *Splish Splash Waterslides v. Cherokee Ins. Co.*, 167 Ga. App. 589, 596 (8) (307 SE2d 107) (1983).