A09A1694. HOOKS et al. v. HUMPHRIES et al.
(692 SE2d 845)

BERNES, Judge.

Cynthia and Marcus Hooks filed this medical malpractice action against Charles M. Humphries, Jr., M.D. and his professional corporation seeking damages for injuries sustained by S. J., their minor child, during her birth.[1] They alleged claims of professional and ordinary negligence and breach of fiduciary duty. Dr. Humphries filed a motion for partial summary judgment on the breach of fiduciary duty and ordinary negligence claims. The trial court granted the motion for summary judgment as to the breach of fiduciary duty claim and dismissed the ordinary negligence claim. The trial court also denied the Hooks' motion to compel evidence related to the breach of fiduciary duty claim.

Following trial, the jury rendered a verdict in favor of Dr. Humphries. The Hooks filed a motion for new trial, which the trial court denied. They subsequently filed the instant appeal, contending that the trial court erred in granting partial summary judgment in favor of Dr. Humphries; in denying their motion to compel; in dismissing their ordinary negligence claim; and in denying their motion for new trial based upon the allegedly improper remarks of defense counsel. We discern no error and affirm.

The record evidence[2] shows that in April 1998, after Mrs. Hooks became pregnant with S. J., she went to Dr. Humphries for prenatal

---

[1] The lawsuit also named several other doctors who were later voluntarily dismissed from the lawsuit.

[2] We note that "[t]he notice of appeal filed by [the Hooks] is not in the form directed by OCGA § 5-6-37 in that, rather than designating portions of the record to be omitted on appeal, [the Hooks] have instructed that only items listed on the notice of appeal be included in the

care. During their initial consultation, Dr. Humphries told Mrs. Hooks that he no longer delivered babies, that his medical treatment would be limited to her prenatal care, and that he would refer her to another obstetrician for delivery of the baby. The other obstetrician, Dr. Willie Adams, Jr., had previously delivered several of Mrs. Hooks's other children.

Mrs. Hooks did not return for a follow-up visit with Dr. Humphries until July 27, 1998. At that time, Dr. Humphries counseled Mrs. Hooks about her failure to appear for scheduled appointments and told her that her pregnancy was considered high risk based on her age and her history of smoking, of complications in prior pregnancies, and of failing to comply with doctor's instructions. Dr. Humphries referred Mrs. Hooks to a specialist, Dr. Michael Scott Edwards, for further evaluation.

Dr. Humphries next examined Mrs. Hooks in September 1998. A glucose test performed during that visit indicated the possibility of gestational diabetes. Dr. Humphries again referred Mrs. Hooks to Dr. Edwards.

On November 6, 1998, Dr. Humphries relinquished Mrs. Hooks's prenatal care to Dr. Adams, who treated her for the duration of the pregnancy. Dr. Humphries sent his medical records on Mrs. Hooks to Dr. Adams.

Mrs. Hooks also began to receive specialized care from Dr. Edwards. During their initial visit, Mrs. Hooks told Dr. Edwards that Dr. Adams would be delivering her baby. On November 10, 1998, Dr. Edwards performed a sonogram on Mrs. Hooks and tested her blood. He diagnosed Mrs. Hooks with gestational diabetes and noted that the baby was abnormally large, approximately 10 lbs., 5 oz. Dr. Edwards referred Mrs. Hooks to a diabetes management course, instructed her to control her diet, and scheduled another sonogram for November 16, 1998. When Mrs. Hooks failed to appear on the appointed date, the sonogram was rescheduled for November 20, 1998. Mrs. Hooks failed to appear on this date as well.

On November 21, 1998, Mrs. Hooks went into labor and was taken to the hospital. Although Mrs. Hooks told the hospital staff that Dr. Adams was her obstetrician, the on-call physician, Dr. Yung-Chun Tsai, performed the delivery. The Hooks allege that the sonogram report prepared by Dr. Edwards, which showed S. J.'s large size, had not been transmitted to the hospital prior to S. J.'s delivery. Rather than performing a Cesarean section, which is typically recommended for babies of S. J.'s size, Dr. Tsai performed a vaginal

record sent to this court." *Bennett v. Executive Benefits*, 210 Ga. App. 429 (436 SE2d 544) (1993). Our recitation of the evidence is based upon those portions of the record that have been submitted for our consideration.

delivery. During the delivery, S. J. sustained a shoulder dystocia, Erb's palsy, and meconium aspiration syndrome.

The Hooks subsequently filed the instant lawsuit against Dr. Humphries and his medical practice, seeking to recover damages for the injuries sustained by S. J. They allege that Dr. Humphries negligently failed to ensure that Mrs. Hooks's prenatal medical records, including the sonogram report, were available in the labor and delivery unit of the hospital at the time S. J. was delivered. Following a trial, the jury rendered a verdict in favor of Dr. Humphries.

1. The Hooks contend that the trial court erred in granting Dr. Humphries's motion for partial summary judgment on their breach of fiduciary duty claim.[3] "Summary judgment is appropriate when the evidence, construed favorably to the nonmoving party, demonstrates that no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law." *Prince v. Esposito*, 278 Ga. App. 310 (1) (628 SE2d 601) (2006). Based on the record evidence, the trial court's entry of summary judgment on this claim was authorized.

The Hooks alleged that Dr. Humphries breached his fiduciary duty by failing to disclose to Mrs. Hooks the reasons he no longer delivered babies. During her deposition, Mrs. Hooks testified that Dr. Humphries informed her during their initial visit that he no longer delivered babies and that he would refer her to Dr. Adams for completion of her prenatal care and for delivery of the baby. The record evidence, however, does not reflect that Mrs. Hooks asked Dr. Humphries his reasons for limiting his obstetrics practice; rather, she simply proceeded with the understanding that Dr. Humphries would only be providing prenatal care. No inquiry as to Dr. Humphries's reasons for limiting his practice was made until after the lawsuit was filed and discovery commenced. During his deposition, Dr. Humphries testified that he no longer practiced in labor and delivery for "mostly personal and some political reasons."

Absent an inquiry by Mrs. Hooks at the time of treatment, Dr. Humphries had no duty to voluntarily disclose the reasons he ceased

---

[3] Dr. Humphries erroneously argues that the Hooks' appeal from the partial summary judgment order is untimely since the notice of appeal was not filed within 30 days after entry of the order. "The party against whom summary judgment was granted may appeal either after the grant of summary judgment or after the rendition of the final judgment. Therefore, when the losing party appeals after the rendition of the final judgment, the grant of summary judgment is still subject to appellate review." *Culwell v. Lomas & Nettleton Co.*, 242 Ga. 242, 243 (248 SE2d 641) (1978). See also *Perrett v. Sumner*, 286 Ga. App. 379, 380 (1) (649 SE2d 545) (2007) ("A party . . . may wait until final judgment to appeal an order granting partial summary judgment."). The Hooks timely appealed from the final judgment entered in this case.

delivering babies. Although a physician has a duty to truthfully answer a patient's questions regarding medical risks, the physician has no duty to voluntarily disclose negative information about his personal life to patients. See *Albany Urology Clinic v. Cleveland*, 272 Ga. 296, 298-299 (1) (528 SE2d 777) (2000); *Prince*, 278 Ga. App. at 313 (1) (b). This is true even if the patient indicates that the information would have been useful in determining whether to seek treatment elsewhere. See *Prince*, 278 Ga. App. at 313 (1) (b). A physician's duty to disclose risks associated with medical treatment is limited to the specific categories of information set forth in Georgia's informed consent statute, OCGA § 31-9-6.1 (a).[4] See *Albany Urology Clinic*, 272 Ga. at 298-299 (1). The personal reasons why a doctor might decide to limit his or her practice area is not included in the list of mandatory disclosures under the informed consent statute.

Because Dr. Humphries had no duty to make the alleged disclosure, the Hooks' breach of fiduciary duty claim failed as a matter of law. See *Albany Urology Clinic*, 272 Ga. at 298-299 (1); *Prince*, 278 Ga. App. at 313 (1) (b).

2. The Hooks contend that the trial court erred in denying their motion to compel Dr. Humphries to further elucidate his reasons for no longer delivering babies. As previously noted, Dr. Humphries deposed that he no longer practiced in labor and delivery for "mostly personal and some political reasons." He also stated that his ability to practice had never been restricted by any hospital or governing authority. Dr. Humphries refused, however, to expound upon his reasons for limiting his practice and invoked the statutory privilege set forth in OCGA § 24-9-27 (a).[5] Dr. Humphries's counsel stated that they would be willing to revisit the issue at a later time following the deposition. The Hooks subsequently filed a motion to compel under OCGA § 9-11-37 (a) (2),[6] which the trial court denied.

We will not interfere with the trial court's decisions regarding discovery matters absent an abuse of discretion. *Strong v. Wachovia Bank of Ga.*, 215 Ga. App. 572 (1) (451 SE2d 524) (1994). No abuse

---

[4] The implied consent statute's mandatory disclosures include: (1) the patient's diagnosis requiring the proposed procedure; (2) the nature and purpose of the procedure; (3) the generally recognized and material risks of "infection, allergic reaction, severe loss of blood, loss or loss of function of any limb or organ, paralysis or partial paralysis, paraplegia or quadriplegia, disfiguring scar, brain damage, cardiac arrest, or death" associated with the procedure; (4) the likelihood of the procedure's success; (5) the practical, recognized and accepted alternatives to the procedure; and (6) the patient's prognosis if the proposed procedure is rejected. See OCGA § 31-9-6.1 (a) (1)-(6).

[5] OCGA § 24-9-27 (a) provides that "[n]o party or witness shall be required to testify as to any matter which may criminate or tend to criminate himself or which shall tend to bring infamy, disgrace, or public contempt upon himself or any member of his family."

[6] "If a deponent fails to answer a question propounded . . . the discovering party may move for an order compelling an answer." OCGA § 9-11-37 (a) (2).

of discretion occurred in the instant case.

The Hooks' motion to compel failed to comply with Uniform Superior Court Rule ("USCR") 6.4 (B), requiring counsel for the movant to certify that prior to filing the motion, he conferred with opposing counsel in a good faith effort to resolve the discovery dispute. That fact alone authorized the trial court's denial of the Hooks' motion. *Strong*, 215 Ga. App. at 572 (1). But more importantly, once summary judgment was granted on the breach of fiduciary duty claim, the evidence sought to be compelled became irrelevant to the issue in the lawsuit, i.e., whether Dr. Humphries breached the standard of care by failing to ensure that Mrs. Hooks's prenatal medical records were timely transmitted to the hospital. See *Snider v. Basilio*, 281 Ga. 261, 263-264 (637 SE2d 40) (2006) (holding that the reason why a nurse was unlicensed was irrelevant to the issue of whether there was a breach in the standard of care). Accordingly, the trial court did not err in denying the motion to compel. See *Hightower v. Kendall Co.*, 225 Ga. App. 71, 72-73 (4) (483 SE2d 294) (1997) (affirming the denial of a motion to compel based upon noncompliance with USCR 6.4 (B) and failure to show that the responses would lead to the discovery of relevant evidence).

3. The Hooks next contend that the trial court erred in dismissing their claim for ordinary negligence. Based upon the record before us, no error has been shown.

The Hooks alleged that Dr. Humphries breached the standard of care by failing to ensure that Mrs. Hooks's prenatal medical records, including the sonogram report, were available in the labor and delivery unit of the hospital at the time S. J. was delivered. In its dismissal order, the trial court concluded that the issue raised by the Hooks was one of professional negligence — medical malpractice. The trial court predicated its decision on statements and arguments made by the Hooks in a July 14, 2008 pleading. Significantly, the Hooks have failed to include in the appellate record the pleading upon which the trial court relied.[7] "It is well established that the burden is on the party alleging error to show it by the record and that where the proof necessary for determination of the issues on appeal is omitted from the record, an appellate court must assume that the judgment below was correct and affirm." *Bennett v. Executive*

---

[7] We note that "the rule as to admissions in judicio applies only to admissions of *fact* and does not apply to opinions or conclusions." (Citation and punctuation omitted; emphasis in original.) *Bollers v. Noir Enterprises*, 297 Ga. App. 435, 437 (1) (677 SE2d 338) (2009). But, because the Hooks have failed to include the prior pleading in the record, we can only speculate as to what assertions were made in the pleading, and thus are unable to determine whether the assertions relied upon by the trial court qualify as valid judicial admissions. Our ability to review this claim is also hampered by the Hooks' failure to submit a complete record of the evidence presented in the trial court.

*Benefits,* 210 Ga. App. 429 (436 SE2d 544) (1993). See also *Armstrong v. Rapson,* 299 Ga. App. 884, 885 (683 SE2d 915) (2009). Accordingly, we affirm the trial court's decision dismissing the Hooks' ordinary negligence claim.

4. Lastly, the Hooks contend that the trial court erred in denying their motion for new trial based upon the allegedly improper remarks of defense counsel during closing argument. The Hooks complain that defense counsel argued: "A good name is rather to be chosen than great riches"; "what [the Hooks] want[ ] to do is wrap a rope around a man who's honorable and honest"; and "[the Hooks] want to . . . hang it as a rope around [Dr. Humphries's] neck."[8]

Pretermitting whether the challenged remarks were improper, "[i]t is axiomatic that harm as well as error must be shown to authorize a reversal by this court." (Citation and punctuation omitted.) *Bailey v. Annistown Road Baptist Church,* 301 Ga. App. 677, 692 (14) (689 SE2d 62) (2009). Harm must be shown by the record and cannot be established by unsupported assertions contained in the appellant's brief. See *Outdoor Systems v. Woodson,* 221 Ga. App. 901, 903 (4) (473 SE2d 204) (1996). Because the Hooks failed to submit the complete trial transcript, we cannot determine whether the challenged remarks were harmful and must therefore assume that the trial court's ruling on this issue was correct. *Bennett,* 210 Ga. App. at 429.

*Judgment affirmed. Miller, C. J., concurs. Barnes, J., concurs specially in Division 1, and fully and completely in Divisions 2, 3, and 4.*


BARNES, Judge, concurring specially.

While I agree with the results in this case, and concur fully and completely with Divisions 2, 3 and 4 of the majority opinion, I do not agree with all that is said in Division 1, and thus concur specially.[9] Hooks argued that Humphries breached his fiduciary duty for failing to volunteer "material facts" — specifically, the reason he no longer delivered babies — that would have allowed her to make an informed

---

[8] In their reply brief, the Hooks attempt to expand upon their claim by referring to additional closing arguments made by defense counsel. Because these arguments were raised for the first time in the reply brief, they have been waived. See *Currid v. DeKalb State Court Probation Dept.,* 274 Ga. App. 704, 707 (1), n. 8 (618 SE2d 621) (2005) (appellants may not impermissibly raise arguments for the first time in their reply brief); *Anderson v. State,* 251 Ga. App. 785 (554 SE2d 811) (2001) (attempts to expand enumeration of errors in reply and supplemental briefs are impermissible). Dr. Humphries's motion to strike the reply brief based upon its failure to comply with the page limit set forth in Court of Appeals Rule 24 (f) is denied.

[9] Because I do not concur fully and completely with all that is said in Division 1, that division is physical precedent only and does not establish binding precedent for cases other than this one. Court of Appeals Rule 33 (a).

decision on whether to continue under his care. She also argued that Humphries "had a duty to place the interests of Ms. Hooks and her child before his own, or any other interests," and moved the court to compel Humphries to disclose why he stopped delivering babies. The trial court granted summary judgment to Humphries on the breach of fiduciary duty claim, holding that Hooks knew from her first visit that Humphries was not going to deliver her baby but planned to refer her to another physician for the delivery. The reason he no longer delivered babies was irrelevant to the malpractice issues, the trial court held, and Humphries had no independent duty to discuss with his patient any personal life reasons for no longer delivering babies in light of *Albany Urology Clinic v. Cleveland*, 272 Ga. 296 (528 SE2d 777) (2000).

Contrary to the statement in *Prince v. Esposito*, 278 Ga. App. 310, 313 (1) (b) (628 SE2d 601) (2006), the court in *Albany* did not hold that a physician never has a duty to disclose negative information about his personal life to patients. It held that failure to disclose "personal factors" such as illegal drug use cannot give rise to a separate cause of action for fraud. Id. at 298. Disclosure was not required by Georgia's informed consent statute, OCGA § 31-9-6.1 (a), and the plaintiff already had a right to recover for any injuries by suing for professional negligence. The plaintiffs could assert nondisclosure of a life factor by a professional in support of their malpractice or professional negligence claims. Id. at 303 (5). By extension, the holding in *Albany* that nondisclosure does not support a separate fraud claim also supports the conclusion that nondisclosure also does not create a separate breach of fiduciary duty claim.

Here, the plaintiff did not allege that Humphries' failure to disclose why he no longer delivered babies constituted malpractice or professional negligence, only that his failure to do so deprived Ms. Hooks of the opportunity to decide whether to change doctors or not. But regardless of *why* Humphries decided not to deliver babies, Hooks knew he was not going to deliver hers. Her malpractice claim — that Humphries failed to ensure that her complete medical record reached the hospital before she delivered — has nothing to do with the reasons behind Humphries' decision not to deliver more babies or Hooks' decision to continue seeing him for prenatal care.

Accordingly, I concur specially in Division 1, and fully and completely in Divisions 2, 3 and 4.

DECIDED MARCH 30, 2010 —

*Ford & Barnhart, James L. Ford, Sr.*, for appellants.

*McCall, Williams, Wilmot & Powell, W. Earl McCall, Henry E. Williams*, for appellees.