**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 22, 2023**

# In the Court of Appeals of Georgia

A23A0057. ZEPHANIAH v. GEORGIA CLINIC, P.C.

BROWN, Judge.

In the second appearance of this case before this Court,[1] Annie Zephaniah appeals pro se from the trial court's order granting the Georgia Clinic, P. C.'s ("the defendant") motion for summary judgment. She contends that the trial court should not have considered the motion for summary judgment as there were outstanding discovery requests and that summary judgment was not appropriate on her battery and

---

[1] In *Zephaniah v. Georgia Clinic*, 350 Ga. App. 408 (829 SE2d 448) (2019), we reversed the trial court's dismissal of Zephaniah's complaint for failing to include the expert affidavit required by OCGA § 9-11-9.1. We reasoned that the conduct of a "'technician' does not fall into any of the categories of professionals enumerated within OCGA § 9-11-9.1 (g)" and that an expert affidavit is not required for claims of intentional conduct like battery. (Citation and punctuation omitted.) Id. at 411-413 (1), (2).

ordinary negligence claims.[2] For the reasons explained below, we affirm in part and reverse in part.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. In reviewing a grant or denial of summary judgment, we owe no deference to the trial court's ruling and we review de novo both the evidence and the trial court's legal conclusions. Moreover, we construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. In doing so, we bear in mind that the party opposing summary judgment is not required to produce evidence demanding judgment for it, but is only required to present evidence that raises a genuine issue of material fact.

(Citation and punctuation omitted.) *Chybicki v. Coffee Regional Med. Center*, 361 Ga. App. 654, 655 (865 SE2d 259) (2021). So viewed,[3] the record shows that Zephaniah

---

[2] Zephaniah does not contest the grant of summary judgment on any other theories of recovery asserted below.

[3] The record before us is rather limited. While the defendant took Zephaniah's deposition, it did not rely upon it in support of its summary judgment motion, and Zephaniah never requested that it be filed to support her opposition to the motion for summary judgment. The defendant relies instead upon the factual allegations in Zephaniah's verified complaint, unverified amended complaint, unverified second amended complaint, and her response to its request for admissions. While the amended complaints are not verified, we may consider the facts alleged as admissions in judicio. See OCGA § 24-8-821 ("Without offering the same in evidence, either party may avail himself or herself of allegations or admissions made in the pleadings of the other."); *Bush v. Eichholz*, 352 Ga. App. 465, 472 (2) (833 SE2d 280) (2019).

went to the defendant's office "for a routine blood draw checkup." After seeing the doctor, a nurse named Dina, with whom Zephaniah was familiar, led her to the lab where blood draws are completed. Zephaniah sat "in the lab chair in anticipation for Dina to draw [her] blood as usual" and "extended [her] right arm out in anticipation of the blood draw." When Dina left without explanation, an unknown "technician . . . tied the tourniquet to the upper right arm and she proceeded to pat the elbow a number of times." When Zephaniah explained that blood had not been taken in that location for 20 years and that the back of her hand was usually used, the technician moved the tourniquet below her elbow and attempted to draw blood from a vessel in Zephaniah's forearm. According to Zephaniah: "The needle pierced the tendon bone . . . , [the technician] kept pushing the needle [until] it couldn't go any further, striking a nerve that immediately fired an electric shock that radiated through [her] arm, into [her] elbow and [her] . . . brain." When Zephaniah "cried, 'You hit my bone,'" the technician withdrew the needle and reinserted it into a vein and drew blood into a vial. Afterward, Zephaniah held her arm "sling-like because of the pain in [her] forearm." After a period of time, she informed Dina about her pain, who responded that the technician "took it in the wrong place," and obtained ice for her.

3

Zephaniah claims that she saw a doctor the following week because of "the pain in [her] forearm" and inability to sleep. She asserts that she has "lived with numbness that [has] lasted years" in her right arm and that her "anatomy was invaded by burning, swelling, crawling nerves, pins and needles, different texture of needle tips, sweat, wasting muscles, [and] symptoms [of] inflammation [that] affected [her] body in various paths unimaginable." Her second amended complaint lists almost 50 medical conditions[4] and approximately 20 symptoms[5] that she contends resulted from or were triggered by the blood draw incident. While Zephaniah failed to include formal legal theories of recovery, her complaints, liberally construed, assert claims

---

[4] These include: brain stem stroke syndrome, cervical spondylosis, pinched nerve, carpal tunnel syndrome, radial nerve injury, ulnar nerve injury, median nerve injury, RSD, metabolic creatinine greater than 300, myofacial pain, radial nerve neuropathy, cubical tunnel syndrome, cervical radiculopathy, De Quervain tenosynovitis syndrome, occipital neuralgia, ulnar neuropathy, chronic pain syndrome, neurological chronic pain, median spondylitis, peripheral neuropathy, neuroma of radial nerve, scar tissue of her radial mid forearm and superficial nerve, cerebral ischemic attacks, lipoma, post traumatic stress syndrome, peripheral nerve neuropathy, and complex pain syndrome.

[5] These include: pain in her hand, wrist, and elbow, inflammation, swelling, tenderness, burning pain, sharp pain, numbness, decreased sensation, firing pins and needles, shooting nerve pain, muscle spasms, cramps, limited range of motion, fascia pain, circulatory pressure symptoms, and nausea.

for negligence, intentional infliction of emotional distress, invasion of privacy, and battery.

After the close of discovery, the defendant moved for summary judgment on all claims asserted by Zephaniah. Following a hearing in which Zephaniah presented her own sworn testimony, the trial court granted summary judgment in an abbreviated order that does not explain its reasoning.

1. Zephaniah contends that the trial court should not have ruled on the defendant's motion because the defendant's failure to provide her with discovery "stymied her ability to retain expert witnesses" and respond to the motion for summary judgment. Our review of this enumeration of error is hindered by Zephaniah's failure to include any citations to the record or legal authority to support her contention. See Georgia Court of Appeals Rule 25 (d). A review of the transcript of the hearing held on the defendant's motion for summary judgment and her written response to the motion shows that she never raised the issue of outstanding discovery as a ground to delay the trial court's ruling on the motion for summary judgment. Having failed to seek a continuance from the trial court below, Zephaniah cannot complain on appeal that the trial court's ruling on the summary judgment motion was

premature. See *Godwin v. Mizpah Farms*, 330 Ga. App. 31, 34-35 (1) (766 SE2d 497) (2014). We therefore find no merit in this claim of error.

2. Zephaniah asserts that genuine issues of material fact exist with regard to her battery claim because her "consent to [the] blood draw was far exceeded by the individual who first forced a needle into a nerve" and then battered her again by attempting a second blood draw without her consent. We disagree.

> In a medical context, consent encompasses two distinct legal principles: "basic" consent and "informed" consent. Informed consent . . . essentially involves a medical professional fully informing a patient of the risks of and alternatives to the proposed treatment so that the patient's right to decide is not diminished by a lack of relevant information. A medical provider's failure to obtain proper informed consent sounds in professional negligence and requires an expert affidavit . . . . With respect to basic consent, a medical touching without consent constitutes the intentional tort of battery for which an action will lie.

(Citations and punctuation omitted.) *Paden v. Rudd*, 294 Ga. App. 603, 605 (2) (669 SE2d 548) (2008). "Continued treatment of a patient after consent has been withdrawn also will give rise to a medical battery claim." *Doctors Hosp. of Augusta v. Alicea*, 332 Ga. App. 529, 544 (3) (774 SE2d 114) (2015).

6

Our case law establishes clear standards for determining whether consent has been effectively withdrawn. Those standards require that the patient act or use language which can be subject to no other inference and that these actions and utterances be such as to leave no room for doubt in the minds of reasonable [persons] that in view of all the circumstances consent was actually withdrawn.

(Citation and punctuation omitted.) *Prince v. Esposito*, 278 Ga. App. 310, 313-314 (1) (c) (628 SE2d 601) (2006). "To permit a lesser standard would be to subject the medical profession to an endless possibility of harassment. The possibility of irresponsible harassment is something the medical profession should not be called upon to bear, dealing as it does with human life and human frailty." *Mims v. Boland*, 110 Ga. App. 477, 484 (1) (b) (138 SE2d 902) (1964).

In this case, the undisputed evidence demonstrates that Zephaniah consented to a blood draw, as demonstrated by her conduct in going to the clinic for the purpose of "a routine blood draw checkup" and in extending her arm so that the blood draw could be performed. It also shows, without dispute, that she never clearly communicated that her consent to a blood draw was withdrawn. Accordingly, the trial

court did not err by granting summary judgment on her battery claim. See *Prince*, 278 Ga. App. at 313-314 (1) (c).[6]

3. In related enumerations of error, Zephaniah contends that the trial court erred by granting summary judgment on her ordinary negligence claim based on the defendant's argument that all of her damages require the testimony of an expert witness to establish causation. She asserts that expert testimony would not be required to establish the pain she experienced when the needle was inserted so deeply it felt like it hit the bone. We agree.

As the Supreme Court of Georgia explained at length in *Cowart v. Widener*, 287 Ga. 622 (697 SE2d 779) (2010):

> [M]ost "medical questions" relating to causation are perfectly capable of resolution by ordinary people using their common knowledge and experience, without the need for expert testimony. Thus, in a wrongful death action based on the theory that the defendant proximately caused the decedent's death by stabbing her in the gut, the plaintiff is not required, in response to a motion for summary judgment, to come forward with expert testimony explaining in medical terms

---

[6] Our opinion in *Johnson v. Srivastava*, 199 Ga. App. 696 (405 SE2d 725) (1991), relied upon by Zephaniah, does not require a different result as it involved informed consent and the performance of a procedure (excision of a mass) beyond that authorized in the consent form (excision biopsy). Id. at 698 (2).

8

precisely how the wound led to her death. Where the causal link between the defendant's conduct and the decedent's injury can be determined by a lay jury without expert guidance, no expert evidence need be produced to defeat a defense motion for summary judgment. See, e.g., *Jester v. State*, 250 Ga. 119, 119-120 (296 SE2d 555) (1982) ("[T]hat a stab wound penetrating entirely through the heart causes death, is not a matter . . . which should even require expert testimony."); [*Allstate Ins. Co. v.*] *Sutton*, 290 Ga. App. [154,] 159-160 [(658 SE2d 909) (2008)] ("[W]hether a blow to the head could cause death [is] a question that we have held to be within a lay person's knowledge"); *Jordan v. Smoot*, 191 Ga. App. 74, 74 (380 SE2d 714) (1989) (holding that whether an automobile collision caused a backache later the same day is not the type of medical question that requires expert testimony).

However, sometimes the link between a defendant's actions and the plaintiff's injury is beyond common knowledge and experience. An example would be a toxic tort case like *Sutton*. There, the plaintiff alleged that she and her daughter suffered ongoing and exacerbated respiratory ailments as a result of exposure to mold in their home caused by faulty repairs and remediation work after a plumbing leak. See 290 Ga. App. at 159-160. The trial court denied the defendants' motion for summary judgment on causation grounds, but the Court of Appeals reversed, noting that "[t]he diagnosis and potential continuance of a disease or other medical condition are 'medical questions to be established by physicians as expert witnesses and not by lay persons.'" Id. at 160 (citation omitted). The court held that the plaintiff's failure to point to any expert medical testimony establishing a causal link between

9

the respiratory conditions and the mold meant that the defendants were entitled to summary judgment. See id. at 159-160.

. . .

Thus, in deciding whether the plaintiff is required to come forward with expert testimony to withstand a defense motion for summary judgment, the critical question is not whether the causation element involves a "medical question" in the generic sense of the term. Rather, it is whether, in order to decide that the defendant's conduct proximately caused the plaintiff's injury, a lay jury would have to know the answers to one or more "medical questions" that, as the case law has defined that term, can be answered accurately only by witnesses with specialized expert knowledge. To make the term more clearly reflect its use in deciding cases, we will now refer to "specialized medical questions." For the reasons discussed above, such expert evidence is not required in the mine run of simple negligence cases, but it is required in some negligence cases.

(Footnote omitted.) *Cowart*, 287 Ga. at 628-629 (2) (b).

Here, the vast majority of Zephaniah's claimed damages undoubtedly require expert testimony to establish causation. The trial court nonetheless erred by granting summary judgment on Zephaniah's entire ordinary negligence claim because the instantaneous pain she experienced due to the alleged negligence of the technician

10

during the blood draw is "perfectly capable of resolution by ordinary people using their common knowledge and experience." *Cowart*, 287 Ga. at 628 (2) (b).[7]

*Judgment affirmed in part, reversed in part. McFadden, P. J., and Markle, J., concur.*

---

[7] We find no merit in the defendant's contention that Zephaniah's negligence claim fails because she assumed the risk of momentary pain associated with a blood draw. Even if we assume, without deciding, that assumption of the risk applies to the ordinary pain associated with a properly performed blood draw, there is no evidence showing that Zephaniah assumed the risk of elevated pain caused by a negligently performed blood draw. See *Ga. Dept. of Corrections v. Couch*, 312 Ga. App. 544, 547-548 (1) (c) (718 SE2d 875) (2011) ("a plaintiff's comprehension or general understanding of nonspecific risks that might be associated with the activity at issue is not sufficient" to establish assumption of the risk) (citation and punctuation omitted).