A08A1739. BOLLERS et al. v. NOIR ENTERPRISES, INC.
A08A1811. COUNTRYWIDE HOME LOANS, INC. v. NOIR ENTERPRISES, INC.
(677 SE2d 338)

ADAMS, Judge.

Neil and Byrl Bollers appeal from the trial court's orders granting partial summary judgment to Noir Enterprises, Inc. on its breach of contract claim arising out of the construction of the Bollerses' home. The Bollerses also appeal the denial of their own motion for partial summary judgment. In addition, Countrywide Home Loans, Inc., an intervenor in the action, appeals the denial of its motion for partial summary judgment against Noir.

"To prevail at summary judgment, the moving party has the burden to demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the nonmovant's favor, warrant judgment as a matter of law." (Punctuation and footnote omitted.) *Savu v. SunTrust Bank*, 293 Ga. App. 683 (668 SE2d 276) (2008). Here, the evidence showed that Noir and the Bollerses entered into a "Construction Management Agreement" on June 26, 2004. Under that agreement, Noir agreed to "do and coordinate all aspects of preconst[r]uction including but not limited to client relations, developing project budgets and scope of work, permit acquisitions, and working with subs for feasibility assessment, concept development, design and preconstruction management." The management fee was set at $7,500, payable in three install-ments, and the parties "mutually agreed" that this fee "will be subtracted from the total construction management fee to construct the residential home."

On November 12, 2004, the Bollerses entered into a separate "Construction Agreement" with Noir to build their family home. This agreement contained a merger clause providing that it "super-sedes any and all previous agreements, either oral or in writing, between the parties with respect to the subject matter of the agreement." The Construction Agreement also specified that any changes or modifications to the agreement would be invalid unless in writing and signed by all of the parties. The contract price for the home was originally $777,000, but in April 2005, the parties signed an addendum reducing the price to $658,169.

After the house was completed, a dispute arose between the Bollerses and Noir over the costs of the construction. As a result, Noir filed two materialmen's liens on or about February 17, 2006. Approximately one week later, on February 23, 2006, the Bollerses refinanced their construction loan through Countrywide, and the security deed on that transaction was filed on March 3, 2006.

Noir filed a verified complaint against the Bollerses on July 28, 2006. The complaint asserted claims for breach of contract, quantum meruit, foreclosure on the materialmen's liens, and attorney fees. On August 7, Noir filed a notice of commencement of suit on the liens. Countrywide subsequently intervened into the lawsuit with the consent of the parties.

Countrywide was the first to move for partial summary judg-ment, asserting that Noir's materialmen's liens were invalid. The Bollerses also moved for partial summary judgment on that claim and on Noir's claim for quantum meruit. Noir filed a cross-motion for partial summary judgment against the Bollerses on the breach of contract claim, asserting that the Bollerses had admitted in judicio that they had breached the contract.

The trial court initially denied all the summary judgment motions. In response, Noir moved simultaneously for reconsideration and for a certificate of immediate review. The trial court granted the certificate of immediate review, but this Court denied Noir's application for interlocutory appeal. After the return of the remittitur, however, the trial judge granted Noir's motion for reconsideration, awarding Noir partial summary judgment on its breach of contract claim and ordering the entry of judgment against the Bollerses in the amount of $117,718.38.

1. In its summary judgment motion, Noir argued that the Bollerses had admitted in judicio that they were liable for breach of contract. Noir pointed specifically to Paragraph 4 of the Bollerses' "Statement of Material Facts As to Which There Exist No Genuine Issues To Be Tried," filed in support of their own motion for partial summary judgment. That paragraph reads, "The Bollers[es] breached the contract when they failed to pay Noir, and there is due, owing and unpaid a balance of $117,718.38. **(Verified Complaint, Count 3: Foreclosure, Para. 25)**." (Emphasis in original.) Noir argued that this paragraph constitutes an admission that the Bollerses breached the parties' agreement and owed Noir the stated amount.

The Bollerses counter, however, that this assertion is a verbatim quote from Noir's verified complaint. Paragraph 4, in fact, cites to the quoted provision, although no quotation marks appear. The Bollerses also note that they denied similar assertions in response to the verified complaint and in response to Noir's own Statement of Material Facts.

We disagree with Noir's argument that the Bollerses have admitted to breaching the parties' contract. Although a court may rely upon judicial admissions in ruling upon summary judgment, "[t]he rule as to admissions in judicio applies only to admissions of *fact* and does not apply to opinions or conclusions." (Citation omitted; emphasis supplied.) *Aycock v. Calk*, 228 Ga. App. 172, 174 (491 SE2d 383) (1997). See also *Kothari v. Patel*, 262 Ga. App. 168, 175-176 (4) (585 SE2d 97) (2003); *Mountain Bound v. Alliant FoodService*, 242 Ga. App. 557, 558 (530 SE2d 272) (2000). The averment that a breach of contract occurred is a legal conclusion, or at least a mixed conclusion of law and fact. See generally *McDonald Constr. Co. v. Bituminous Cas. Corp.*, 279 Ga. App. 757, 760 (632 SE2d 420) (2006) (interpretation of contract and the rights and obligations of parties thereunder may involve mixed question of law and fact). Accordingly, we find that the statement that the Bollerses breached the contract did not constitute an admission in judicio.

Paragraph 4 may be interpreted to contain, at most, factual admissions that a contract exists and that a balance of $117,718.38 was left unpaid. These admissions are not sufficient to establish

YALE LAW LIBRARY

liability as a matter of law. That is especially true in this case where factual issues remain as to the terms of the contract governing this transaction, as discussed in Division 2, infra. The question of breach, the ultimate issue, remains for the jury. Compare *Versico, Inc. v. Engineered Fabrics Corp.*, 238 Ga. App. 837, 839 (1) (520 SE2d 505) (1999) (trial court properly relied upon factual admissions in judicio in granting summary judgment on breach of warranty claim). Accordingly, we reverse the trial court's order granting partial summary judgment to Noir.[1]

2. The Bollerses next assert that the trial court erred in denying their motion for partial summary judgment as to Noir's claim of quantum meruit. The Bollerses assert this claim is meritless because the parties' relationship is governed by contract.

"It has long been the law in Georgia that although a party may plead in alternative counts, no recovery may be had in quantum meruit when a contract governs all claimed rights and responsibilities of the parties." (Citations omitted.) *Choate Constr. Co. v. Ideal Electrical Contractors*, 246 Ga. App. 626, 630 (4) (541 SE2d 435) (2000). Nevertheless, a party to a contract who accepts valuable services in excess of those contemplated in the contract may be liable to pay for such services if they are necessary to complete the contract:

> [W]hen one renders services valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof. Even if there is an express contract, if services not contemplated by the original agreement become necessary to achieve the contractual objective and are rendered and accepted, the law implies and enforces performance of a promise to pay for such extra services.

(Citation and punctuation omitted.) *Holder Constr. Group v. Ga. Tech Facilities*, 282 Ga. App. 796, 801-802 (4) (640 SE2d 296) (2006).[2]

Here, Noir presented affidavit testimony that the Bollerses' finished house "included numerous items not included in the scope of work for the $658,169 contract." Thus, Noir apparently seeks to recover for services rendered outside the parties' contract. The

---

[1] Given our holding in Division 1 reversing the grant of partial summary judgment to Noir, we need not reach the Bollerses' argument that the trial court decided the motion for reconsideration outside its term of court in violation of OCGA § 9-11-60 (h).

[2] In this context, a claim of quantum meruit requires proof of "(1) the performance of valuable services; (2) accepted by the recipient or at his request; (3) the failure to compensate the provider would be unjust; and (4) the provider expected compensation at the time services were rendered." (Citation omitted.) *Amend v. 485 Properties*, 280 Ga. 327, 329 (627 SE2d 565) (2006).

evidence indicates, however, that Noir and the Bollerses entered into up to three separate contracts. First is the Construction Management Agreement signed June 26, 2004 purporting to cover preconstruction work. Second, Noir contends that the parties entered into an oral construction management contract under which Noir agreed to act as construction manager for the actual building of the house. Noir does not assert any particular terms of this oral agreement, other than that the $7,500 fee under the first management contract would be deducted from the management fee under the second contract. Third is the Construction Agreement signed November 12, 2004, which Noir concedes was signed after the parties entered into the oral construction management contract.

The Construction Agreement contained a merger clause providing that it superseded all prior contracts, whether oral or written. Noir contends, however, that the parties signed the Construction Agreement solely to aid the Bollerses in obtaining construction financing and not with the intent of superseding the oral management agreement.[3] Despite this contention, Noir is bound by the merger clause. See *Atlanta Multispecialty Surgical Assoc. v. DeKalb Med. Center*, 273 Ga. App. 355, 356 (1) (615 SE2d 166) (2005) ("Where the terms of a contract are unambiguous, the court must enforce it literally, even if one party contends that he understood the contract to mean something else."). But this Court has also held that oral promises that do not vary the terms of the parties' written contract may be enforceable as a collateral agreement and thus not defeated by a merger clause. See, e.g., *Brannen/Goddard Co. v. Collin Equities*, 227 Ga. App. 352, 354 (489 SE2d 106) (1997). Accordingly, jury questions remain as to the existence and terms of any oral management agreement and as to whether it is enforceable as a collateral agreement in light of the merger provision.

Moreover, factual issues remain regarding the scope of work contemplated in the Construction Agreement. Under that contract, Noir agreed to "construct a single-family residence . . . according to the plans, specifications, and drawings that have been agreed on and initialed by the Contractor and the Owner, and that are attached to this Agreement as Exhibit 'B.' " But Exhibit B is blank. Accordingly, additional evidence is necessary to establish the plans, specifications and drawings agreed upon by the parties. See *Andrews v. Skinner*, 158 Ga. App. 229, 230 (279 SE2d 523) (1981) ("parol evidence is admissible to explain an ambiguity in a written contract, although

[3] To support this argument Noir points to a $3,500 check written by the Bollerses on May 25, 2005. The memo line on the check indicates that the check is for a construction management fee with the date May 27, 2005.

such evidence is inadmissible to add to, take from, or vary the writing itself"). See also OCGA § 13-2-2 (1).

Further, at the time the parties signed the addendum changing the construction price, the Construction Agreement was altered by scratching out the purchase price and writing in the new price by hand. This change was initialed by at least one of the parties. Noir contends that the parties also reduced the scope of work to reflect this new price, but Exhibit B remains blank in the altered agreement. An issue of fact exists, therefore, as to whether the parties also altered the planned design at the time they signed the addendum. See generally *Derosa v. Shiah*, 205 Ga. App. 106, 109-110 (2) (421 SE2d 718) (1992).

In addition, issues remain as to whether Noir performed work in excess of the final agreed-upon design, entitling him to compensation. See *Biederbeck v. Marbut*, 294 Ga. App. 799, 802-803 (3) (670 SE2d 483) (2008); *Pro Metal Bldg. Systems v. T. E. Driskell Grading Co.*, 170 Ga. App. 127, 128 (1) (316 SE2d 574) (1984). Any such recovery would be under a theory of quantum meruit. Thus, even in light of the parties' contractual relationship, the trial court properly denied summary judgment on this claim.

3. Countrywide and the Bollerses also argue, however, that Noir's claims under its materialmen's liens were subject to summary judgment.

> A defendant movant can prevail on summary judgment by demonstrating that the evidence in the record is insufficient to create a jury issue on one element of the plaintiff's claim. If the defendant shows this, the burden shifts to the plaintiff to present evidence that gives rise to a triable issue.

(Citations omitted.) *Sturdivant v. Moore*, 282 Ga. App. 863, 865 (640 SE2d 367) (2006). Here, Countrywide and the Bollerses assert that the liens fail because Noir did not follow the strict statutory requirements applicable to such liens. In particular, they assert that the property descriptions attached to each of the liens do not accurately describe the Bollerses' property.

Georgia law sets out

> a detailed statutory scheme for regulating liens filed by materialmen who furnish supplies and materials for building, repairing, or improving property. Under this statutory scheme, a materialman must comply with the provisions of OCGA § 44-14-361.1 (a) in order to "make good" his lien.

(Punctuation and footnote omitted.) *Gen. Elec. Co. v. North Point*

*Ministries*, 289 Ga. App. 382, 383 (657 SE2d 297) (2008). Although this statutory scheme is designed to protect the construction industry, it is in derogation of common law and "must be strictly construed in favor of the property owner and against the materialman." (Citation omitted.) *Browning v. Gaster Lumber Co.*, 267 Ga. 72, 73 (475 SE2d 576) (1996). See also *Mull v. Mickey's Lumber &c. Co.*, 218 Ga. App. 343, 345 (2) (461 SE2d 270) (1995). Indeed, the statute provides that "on failure of any of [its provisions] the lien shall not be effective or enforceable." OCGA § 44-14-361.1 (a).

The statute requires that a claim of lien substantially meet certain requirements, including a description sufficient to allow for the identification of the property affected:

> The filing for record of a claim of a materialmen's lien "shall be in substance" as provided in OCGA § 44-14-361.1 (a) (2); thus, the filing of a claim of lien need not be identical in content to the form prescribed in this subsection. The test for sufficiency of a description in a legal document is whether it makes possible the identification of the real or personal property described.

*Mull v. Mickey's Lumber &c. Co.*, 218 Ga. App. at 345 (2). A property description complies with the statute if it identifies the land or provides a key by which the land may be identified with the help of extrinsic evidence.[4] Id. This key may be "any descriptive words in the claim of lien on real estate or other legal document requiring a legal description of land which will lead definitely to the land therein." (Citations omitted.) Id. If the descriptive words when aided by extrinsic evidence fail to identify the property, however, the lien fails. Id.

The liens in this case named the Bollerses as the owners of the property, which was identified as "1211 Lightwood Court, Loganville, 30052." The liens also referenced an exhibit containing a metes and bounds description of two land tracts. The first is described as "that tract or parcel of land lying and being in Land Lots 284 and 289 of the 4th District of Rockdale County, Georgia" and consisting of 29.87 acres. This description references a survey as its basis. The second tract of property is described as consisting of 26.885 acres located in the same land lots, but this second description references a plat book, not a survey.

In arguing that this does not meet the statutory requirements,

---

[4] See, e.g., *Blanton v. Major*, 144 Ga. App. 762 (1) (242 SE2d 360) (1978) (lien description sufficient where it states property owner, land lot, district, lot number, block, county, and subdivision).

the Bollerses and Countrywide note that these descriptions differ from the description of the Bollerses' property found in their warranty and security deeds. Although the security deed also references the street address 1211 Lightwood Court, it provides that this address is in Conyers, not Loganville, and in zip code 30012, not 30052. And the legal description in both deeds identifies a parcel of land "lying and being in Land Lot 289 of the 4th District, Rockdale County, Georgia, being lot 4, Wellington Creek Estates," citing a plat book that differs from the one referenced in the lien exhibits. Accordingly, the liens refer to an address in a different city and their exhibits refer to different, presumably larger tracts of land than the property described in the Bollerses' deeds.

Once the Bollerses and Countrywide demonstrated this discrepancy, the burden shifted to Noir to point to a key that "open[s] the door to extrinsic evidence leading unerringly to the land intended by the parties to be the subject of the" liens. *Gateway Family Worship Centers v. H.O.P.E. Foundation Ministries*, 244 Ga. App. 286, 288-289 (2) (535 SE2d 286) (2000). In response, Noir asserts that the Bollerses admitted in their answer that the Loganville address is correct and that should be sufficient. Even accepting that the liens give the proper street address, this Court has previously found that a street address alone does not provide an adequate description of property for purposes of a legal document. *Kirkley v. Jones*, 250 Ga. App. 113, 117 (2) (550 SE2d 686) (2001). See also *Gateway Family Worship Centers v. H.O.P.E. Foundation Ministries*, 244 Ga. App. at 288 (2). While other cases have found that a street address, along with an identification of the county and owner,[5] or other similarly limited property descriptions sufficient,[6] none of these decisions resolve the issues in this case where the liens appear to contain as many as three separate property descriptions.

Pretermitting whether a street address alone can provide an adequate property description, the liens here contain more than a street address. We cannot ignore the additional property descriptions found in the lien exhibits, neither of which match the property description in the Bollerses' deeds. Noir has failed to explain this discrepancy or to establish that either of these descriptions identifies the Bollerses' property. Further, Noir has not demonstrated how these descriptions relate, if at all, to the street address or to each other. While extrinsic evidence may exist to explain these discrepancies, Noir failed to identify it in response to the summary judgment motions. Thus, Noir did not meet its burden of pointing to a key in

---

[5] *Love v. Hockenhull*, 91 Ga. App. 877, 878 (3) (87 SE2d 352) (1955).

[6] See *Blumberg v. Nathan*, 190 Ga. 64, 66-67 (8 SE2d 374) (1940) and cases cited therein.

the liens that leads unerringly to an identification of the Bollerses' property. Without any such explanation, the lien forms appear to address one parcel of property while the lien exhibits address two others, making the lien documents "internally inconsistent." *Harpagon Co. v. Gelfond*, 279 Ga. 59, 61 (1) (608 SE2d 597) (2005). "Thus, the identity of the property [that is the subject of the liens] remains in question." Id. Accordingly, "the lien document, due to a unilateral mistake by the appellee, inaccurately described the property subject to the attempted lien, and no adequate key can be found in this instance to remedy this fatal deficiency." (Punctuation omitted.) *Mull v. Mickey's Lumber &c. Co.*, 218 Ga. App. at 346 (2). We therefore reverse the trial court's denial of the motions for partial summary judgment on Noir's claim on its liens.

*Judgment affirmed in part and reversed in part in Case No. A08A1739. Judgment reversed in Case No. A08A1811. Smith, P. J., and Mikell, J., concur.*

DECIDED MARCH 12, 2009 —
RECONSIDERATIONS DENIED APRIL 10, 2009.

*Novy & Vaughan, Deborah M. Vaughan*, for appellant (case no. A08A1739).

*Smith, Gambrell & Russell, Aaron P. M. Tady, Thomas M. Barton*, for appellant (case no. A08A1811).

*Fellows & LaBriola, Henry M. Quillian III, Thomas J. Mihill, Christina M. Baugh*, for appellee.