**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 29, 2012**

# In the Court of Appeals of Georgia

A12A1300. ROWE et al. v. LAW OFFICES OF BEN C.
BRODHEAD, PC.

A12A1301. LAW OFFICES OF BEN C. BRODHEAD, PC. v.
ROWE et al.

BRANCH, Judge.

This dispute over an attorney fee agreement went to trial, and a jury returned a verdict in favor of the law firm in the amount of $160,000. The clients appeal and contend the trial court erred (1) by denying their motion for directed verdict on the ground that an amendment to the fee agreement was not enforceable because it lacked consideration; (2) by failing to instruct the jury that the amendment lacked consideration; and (3) by instructing the jury that consideration could be found based on the clients' subsequent actions. The law firm cross-appeals the denial of its motions for directed verdict. For the reasons stated below, we affirm.

The facts relevant to this appeal are fairly straightforward, and following a trial, we construe those facts in favor of the prevailing party in the court below. *Ga. Power Co. v. Irvin*, 267 Ga. 760, 762 (1) (482 SE2d 362) (1997).

So construed, the evidence shows that on January 9, 2007, Theodore P. Rowe and the company he founded – Medical Edge Technologies, Inc. ("MET"), a medical device seller with over $20 million in annual sales – entered into a "Contingent Fee Contract" with the Law Offices of Ben C. Brodhead, P. C. ("Brodhead"). Rowe had learned that MET's supplier DePuy Spine Sales Limited Partnership, a Johnson & Johnson company, (hereinafter "Johnson & Johnson")[1] wanted another company to replace MET in its sales territory, and MET hired Brodhead to negotiate a buyout of MET's lucrative contract with Johnson & Johnson on the best terms possible. The agreement provides that Rowe and MET retained Brodhead to represent them in any dispute "against" Johnson & Johnson:

> The client hereby retains and employs the Firm to represent Client in any and all claims, which [it] may have *against* any individual, or any other

---

[1] Evidence was presented to show that DePuy Spine Sales is a wholly owned subsidiary of Johnson & Johnson. The role of DePuy Spine, Inc. is not well explained by the parties, but the parties do not dispute that both companies are part of the Johnson & Johnson family of companies and controlled by Johnson & Johnson. We will refer to these entities collectively as "Johnson & Johnson" herein.

2

entity, firm, person or corporation liable therefore or in connection therewith, arising out of any dispute related to a business relationship with DePuy Spine, Inc., DePuy Spine Sales Limited Partnership, and/or Johnson & Johnson; and *to pursue said claim and recover any and all damages and compensation* to which the Client may be entitled as well as to compromise and settle all such claims (*hereinafter, the "Case"*).

(Emphasis supplied.) In exchange for legal services "in the Case," Rowe and MET agreed to pay Brodhead

an initial non-refundable payment of $25,000.00 as well as a sum equivalent to the following distribution of the total amount recovered in *said case*: forty percent (40%) of all money and property recovered, from the proceeds of a settlement reached before suit is filed, and forty percent (40%) of all money and property which are the proceeds of any suit and judgment or from a settlement during litigation, before or after trial, whether or not said recovery occurs before or after any lawsuit is filed.

(Emphasis supplied.) The agreement states that it "shall apply only to work to be performed *in this Case* by the Firm." (Emphasis supplied.) And Brodhead had a right to withdraw from the representation at any time. [2]

---

[2] MET was authorized to discharge Brodhead, as well, subject to certain conditions.

3

After the parties entered into the agreement, the nature of the legal work changed dramatically. Instead of attempting to buyout MET's contract, Johnson & Johnson filed a $3 million federal lawsuit and an arbitration in Massachusetts, as well as several motions for injunctive relief, designed to take MET's employees and customers and to drive Rowe out of the medical device industry. In Rowe's own words, "All hell broke loose [in February 2007]." These actions required considerable legal effort from Brodhead from a defense standpoint that was markedly different from the anticipated plaintiff's suit *against* Johnson & Johnson as described in the Contingent Fee Contract. This legal work also fell outside the description of "the Case" and the compensation terms thereof. Brodhead told Rowe that, under the Contingent Fee Contract, if MET lost the suit, Brodhead would not be paid and would go out of business. MET and Rowe also asked Brodhead to handle other legal matters, including filing two separate suits in Georgia against parties mentioned in the original fee agreement as well as parties outside of that agreement, including some of MET's own employees. As a result, Brodhead and Rowe had multiple negotiations during which the parties discussed whether the contingency fee contract was inadequate, and Brodhead stated that it would have to withdraw from the representation or receive different compensation for the new work. Ultimately, MET

4

and Rowe decided to retain Brodhead for the considerable defense effort and to amend the agreement so Brodhead would be compensated for that effort and other work.

Accordingly, on March 20, 2007, the parties executed an Amendment to their original agreement. The Amendment provides that the consideration includes work already performed that was outside the terms of the original agreement:

> In consideration of the mutual promises herein contained and other good and valuable consideration, including but not limited to the substantial amount of work already performed by the Firm for the client *that was beyond the work contemplated by the Contingent Fee Contract*, the parties hereby amend the Contingent Fee Contract as follows. . . .

(Emphasis supplied.) The Amendment then provides that the payment provision of the original agreement is replaced with new language pursuant to which Rowe and MET would pay Brodhead $1,200,000 "for all services which have already been performed by the Firm for the Client as of the date of the signing of this Amendment to Contingent Fee Contract," as well as 40% of any money recovered for Rowe and MET after the date of the Amendment. The reference to Brodhead working on "the Case" was removed from the provision regarding payment; instead, the Amendment provides that Brodhead would receive 40% of all money and property recovered for the client "regardless of whether said recovery results from a settlement, a judgment, an

5

arbitration, a mediation, or any other method." As was the case with the original agreement, Rowe signed the Amendment for himself and MET, and Mr. Brodhead signed for his firm.

After significant litigation followed by a two-week arbitration of the dispute between Johnson & Johnson and MET in the fall of 2007, the Massachusetts arbitrators awarded a net recovery of $1.5 million to MET (a $2 million award for MET offset by a $0.5 million award against MET)[3]; moreover, as a result of Brodhead's efforts, MET was able to remain in business throughout the litigation. In early January 2008 MET received a Johnson & Johnson check that Rowe signed over to Brodhead, and the check was deposited into Brodhead's escrow account. At that time, based on the Amendment, Brodhead was entitled to a total of $1.8 million (the flat fee of $1.2 million, which was not yet paid, plus 40% of the $1.5 million recovery). Thus, after receiving the check, Brodhead was still owed $300,000 under the payment terms of the Amendment.

On January 31, 2008, because of financial difficulties, MET and Rowe requested a loan from Brodhead, who loaned MET $150,000 (the "Loan"). The terms

[3] Some of these figures also include interest, but the precise amounts are not relevant to this appeal.

6

of the Loan were printed on the reverse side of the check and were provided in larger print to Rowe, who read them prior to cashing the check. That language states that the check is a loan to Rowe and MET and that, by cashing the check, Rowe and MET ratify their previous obligation to Brodhead for $300,000. Rowe signed the check on behalf of himself and MET and deposited it into a MET account. Finally, MET claimed the $150,000 as a loan and the $1.5 million payment as attorney fees on its federal income tax return.

Ultimately, MET and Rowe refused to repay the Loan or pay Brodhead for the remainder due under the fee agreement as amended. Accordingly, Brodhead brought this suit, and MET and Rowe answered and asserted counterclaims for return of their alleged share of the $1.5 million recovery from Johnson & Johnson. Both sides moved for summary judgment, and the court denied both motions. But in its order, the trial court held that the Amendment was not enforceable because, on its face, it lacked consideration given that it was predicated upon services that had "already been performed" by Brodhead. The court added, however, that "issues of performance and acceptance so as to make an otherwise unenforceable agreement enforceable are typically jury questions," and that because Brodhead had presented evidence that it continued to provide services based upon entering into the Amendment, the matter

needed to be submitted to the jury. MET and Rowe moved for a directed verdict at the close of Brodhead's evidence and at the conclusion of the trial on the basis that the Amendment lacked consideration, and Brodhead moved for a directed verdict on several issues, including the enforceability of the Amendment and the Loan as a matter of law; the court denied all motions. The case was tried before a jury, and the jury returned a verdict in favor of Brodhead in the amount of $160,000. In appeal No. A12A1300, MET and Rowe appeal the final judgment; in appeal No. A12A1301, Brodhead cross appeals the denial of its motions for directed verdict.

*A12A1300*

1. MET and Rowe first contend the trial court erred by not granting their motions for directed verdict. They agree with the trial court's conclusion that the Amendment on its face lacks sufficient consideration to be enforceable, but they argue the trial court erred by concluding that there remained issues regarding performance and acceptance that created a jury issue as to whether the Amendment was enforceable. "A directed verdict is authorized only when there is no conflict in the evidence on any material issue and the evidence introduced, with all reasonable deductions, demands a particular verdict." (Punctuation and footnote omitted.) *H. J. Russell & Co. v. Jones*, 250 Ga. App. 28-29 (550 SE2d 450) (2001) (footnote

8

omitted). For the following reasons, we find that the trial court was not required to grant a directed verdict in favor of MET and Rowe.

"To constitute consideration, a performance or a return promise must be bargained for by the parties to a contract," which means that "it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." OCGA § 13-3-42 (a) & (b). The bargained-for performance may be an act other than a promise, and it can include a forbearance or the creation, modification, or destruction of a legal relation. OCGA § 13-3-42 (c).[4]

Here, evidence was presented to show that MET and Rowe bargained for a performance or a return promise from Brodhead. To be considered the result of a bargain, "it is enough that one party manifests an intention to induce the other's response and to be induced by it and that the other responds in accordance with the inducement." Rest., Contracts 2d, § 71, comment b. At trial, evidence was presented to show that prior to the Amendment, Brodhead performed work neither anticipated

---

[4] OCGA §§ 13-3-42 was adopted in 1981, and it is based on the Restatement, Contracts 2d, § 71. *Folks, Inc. v. Dobbs*, 181 Ga. App. 311, 313 (2) (352 SE2d 212) (1986).

9

by nor described in the original agreement.[5] At this point, MET and Rowe were legally obligated to pay, and Brodhead was entitled to receive, the reasonable value of these additional services. Cf. *Gerdes v. Russell Rowe Communications*, 232 Ga. App. 534, 537 (3) (502 SE2d 352) (1998) ("The reasonable value of 'extra work performed in addition to what the contract contemplated' can be recovered in quantum meruit."); *Bollers v. Noir Enterprises*, 297 Ga. App. 435, 438 (2) (677 SE2d 338) (2009).

The parties then entered into negotiations, during which Brodhead made clear that he would discontinue work altogether (as was authorized by the terms of the original agreement) unless MET and Rowe agreed to a new compensation arrangement. Both parties agreed and entered into the Amendment, which Rowe signed on behalf of MET and himself. The Amendment specifically stated that the consideration supporting it included a "substantial amount of work already performed by the Firm for the Client that was beyond the work contemplated by the [original agreement]." Thus, the element of a bargain was satisfied because MET and Rowe manifested an intention to induce Brodhead to continue with the representation, and

---

[5] The trial court ignored this aspect of the stated consideration. It only focused on the fact that the work had already been performed.

10

MET and Rowe were induced to change the payment terms by Brodhead's agreement to do so; Brodhead, in turn, responded by promising to perform. OCGA § 13-3-42 (a) & (b). See generally *Giant Peanut & Grain Co. v. Long Mfg. Co.*, 129 Ga. App. 685, 687 (201 SE2d 26) (1973) (describing consideration for a modification to an agreement).

The consideration Brodhead provided in exchange for the amended payment term was a valid type of consideration. See OCGA § 13-3-42 (c). For example, it has been held that one party's promise to perform under a contract modification, when it is not obligated to do so, is sufficient consideration for a "return promise to retroactively and prospectively reprice" work under the contract. See, e.g., *Gardiner, Kamya & Assoc., P. C. v. Jackson*, 369 F3d 1318, 1323 (Fed. Cir. 2004) (relying in part on the Restatement, Second, of Contracts, §§ 71, 72, & 73). Similarly, "the continuation of work under a contract which is terminable at will supplies the necessary consideration for contract conditions," such as the addition of a new term. *Hans Godo Frabel, Inc. v. Brennan's of Atlanta*, 151 Ga. App. 379, 380 (1) (259 SE2d 649) (1979). See also *Atlanta Dairies Cooperative v. Grindle*, 182 Ga. App. 409, 411 (2) (356 SE2d 42) (1987) ("[T]here was sufficient evidence of consideration for appellant's alleged agreement to modify the contract price of its previously sold

11

goods.") (citations omitted). Here, Brodhead provided consideration sufficient to satisfy the requirements of OCGA § 13-3-42 in the form of uncompensated work performed outside the scope of the original agreement, by agreeing to continue the representation, and by agreeing to the terms of the Amendment.

Finally, the trial court correctly held that the parties' actions subsequent to the Agreement were also relevant to the issue of consideration. "Part performance, the doing of contemplated acts, can furnish the required consideration and mutuality otherwise lacking." See *Franklin v. UAP/GA. AG. CHEM*, 237 Ga. App. 71, 73 (514 SE2d 241) (1999) (citation omitted). See also *Roberson v. Eichholz*, 218 Ga. App. 511, 513 (2) (462 SE2d 382) (1995) (same). Evidence was presented to show that after the parties signed the Amendment, Brodhead continued to perform thereunder.

Construing the evidence in favor of Brodhead, as we must, we conclude the trial court had no basis for granting a directed verdict in favor of MET and Rowe and therefore did not err in refusing to do so.

2. MET and Rowe contend the trial court erred by failing to charge the jury "that the Amendment, as a matter of law, lacked consideration on the face of the

document."[6] MET and Rowe also contend the trial court erred by charging the jury that continuation of work under a contract terminable by the parties may provide consideration for modification or amendment of a contract. These enumerations are controlled adversely to MET and Rowe by Division 1.

*A12A1301*

On cross-appeal, Brodhead contends the trial court erred by denying its motions for directed verdict on the enforceability of the Amendment and the enforceability of the Loan.[7] OCGA § 9-11-50 (a) provides that "[i]f there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed."

---

[6] MET and Rowe failed to request the charge in writing, but they did make an oral request for such a charge and objected to the court's failure to give it.

[7] Brodhead also seeks review of the trial court's denial of its pretrial motions for summary judgment on the same grounds. But after a verdict and judgment, review of an order denying summary judgment is moot. *Kicklighter v. Woodward*, 267 Ga. 157, 162 (4) (476 SE2d 248) (1996); *Oakhurst Presbyterian Church v. Hendrix*, 298 Ga. App. 226 (1) (679 SE2d 742) (2009). Although Brodhead did not file a motion for judgment notwithstanding the verdict, such a motion "need not be filed as a condition precedent to review upon appeal of an order or ruling of the trial court overruling a motion for directed verdict." OCGA § 5-6-36 (b); see also *Preferred Risk Ins. Co. v. Boykin*, 174 Ga. App. 269, 271 (1) (329 SE2d 900) (1985).

13

1. Brodhead contends that the Contingent Fee Agreement as amended was enforceable as a matter of law and that the trial court therefore erred by refusing to grant a directed verdict in its favor on that point. Relevant issues of fact, however, defeat Brodhead's assertion of error. The jury was presented with issues of fact regarding whether the parties bargained for the Amendment and whether Brodhead performed work outside the scope of the original agreement before entering into the Amendment , both of which were relevant to the question of the enforceability of the Amendment.

Brodhead also argues that the agreement as amended was enforceable as a matter of law because MET and Rowe ratified the Amendment, together with the amount due, as a matter of law when they accepted the $150,000 Loan. We find no mention of this argument in Brodhead's motions for directed verdict. "A motion for a directed verdict shall state the specific grounds therefor." OCGA § 9-11-50 (a). A failure to move for a directed verdict on a specific ground precludes review of that decision on appeal, although the appealing party may seek a new trial on this ground. See *Aldworth Co. v. England*, 281 Ga. 197, 201 (637 SE2d 198) (2006). Brodhead, however, does not seek a new trial on appeal; it seeks remand for the entry of

14

judgment in its favor on this point. Therefore, this ground of appeal is not properly before us.

2. Brodhead also contends the Loan was enforceable as a matter of law and that, therefore, the trial court erred by denying its motion for directed verdict on that point.

In their answer, MET and Rowe raised as a defense that the Loan was not enforceable because the parties were in a fiduciary relationship at the time the parties entered into the Loan. Thereafter, the parties apparently agreed that the trial court should construe this defense as a counterclaim. And MET and Rowe amended their counterclaim to allege that Brodhead breached his fiduciary duties to them, in part, by forcing him to take the Loan subject to the additional terms printed on the back of the check. In denying Brodhead's motion for summary judgment with regard to the Loan, the trial court held that the fact that the parties were in a confidential relationship raised an issue of fact about the enforceability of the Loan. MET and Rowe continued to assert a claim for breach of fiduciary responsibility in the joint pre-trial order. Then at trial, in addition to the existence of a fiduciary relationship, MET and Rowe presented evidence to the jury to show that at the time the Loan was signed, MET and Rowe were in extreme financial distress (of which Brodhead was aware) and that Brodhead was holding the $1.5 million settlement proceeds in escrow, as well as

15

evidence that MET and Rowe disputed the language on the back of the check and that Rowe signed the document as a result of these factors. Finally, the trial court charged the jury regarding the effect of fiduciary relationships.

In short, a claim of breach of fiduciary duty was presented to the jury, and the verdict does not indicate whether the trial court awarded MET and Rowe any damages on that claim. The relevant part of the verdict read by the jury only stated "We, the jury, find in favor of the plaintiff and against the defendants in the amount of $160,000," an amount that is significantly less than the total amount requested by Brodhead. It also appears that an issue of fact was presented for the jury regarding the effect of the parties' fiduciary relationship on the enforceability of the Loan. And Brodhead has not asserted any error with regard to the presentation of these claims to the jury. Thus, without a verdict form that shows whether the jury awarded MET and Rowe damages for breach of fiduciary duty or, even, whether the jury found in favor of Brodhead on the Loan, this Court cannot determine whether error occurred. See *City of Baldwin v. Woodard & Curran*, 316 Ga. App. 768, 771 (1) (730 SE2d 486) (2012) (verdict form did not show upon which of two claims it was based). Compare *Curran v. Scharpf*, 290 Ga. 780 (1) (726 SE2d 407) (2012) (failure to object to the

16

form of the verdict waives errors "that could have been fixed through any means connected with the form of the verdict itself").

In sum, Brodhead has not shown the trial court erred by denying its motions for directed verdict.

*Judgment affirmed. Miller, P. J., and Ray, J., concur.*