A03A0286. KOTHARI v. PATEL.
A03A0287. PATEL et al. v. PATEL.
(585 SE2d 97)

SMITH, Chief Judge.

This matter, arising from a business venture, appears in this court for the second time. The origins of this consolidated appeal lie in an action filed by Interstate Development Services of Lake Park, Georgia, Inc. (IDS) against Vijay Patel (Vijay). Vijay answered and counterclaimed, and the case went to trial in 1994, resulting in a ver-

---

dict for IDS on its complaint and for Vijay on his counterclaim for lost profits. On appeal by IDS, we reversed the judgment for Vijay on the ground that the evidence supporting it was too speculative. *Interstate Dev. Svcs. v. Patel*, 218 Ga. App. 898 (463 SE2d 516) (1995).

In 1996, Vijay moved to set aside the judgment in the previous suit and brought suit against IDS and the other three individual principals in the corporation, Dr. Arvind Patel, who is Vijay's uncle, Arvind's wife Varsha Patel, and Dr. Prashant Kothari, Arvind's friend and business associate. He sought compensatory and punitive damages from the individuals, dissolution of the corporation, and other injunctive relief. Vijay's motion to set aside was granted, and the parties agreed to consolidate the prior suit, which had been returned to its pretrial status, with Vijay's action for trial. Because Vijay sought punitive damages, the trial was bifurcated.

In the first phase, the jury returned a verdict in favor of Vijay for $209,556 in compensatory damages, $248,854 to compensate Vijay for his interest in IDS, and $212,300 in expenses of litigation. It found that Vijay was not liable on the corporation's counterclaim and found clear and convincing evidence to support an award of punitive damages. In the second phase, the jury awarded punitive damages in the amount of $750,000 against Arvind Patel, $100,000 against Varsha Patel, and $350,000 against Kothari. Judgment was entered on the verdicts, and the defendants' motions for judgment notwithstanding the verdict (j.n.o.v.), for new trial, and to amend the judgment were denied. In Case No. A03A0286, Kothari appeals from the judgment against him, and in Case No. A03A0287, the remaining defendants appeal. The appellants have consolidated their appeals, with one brief being filed on behalf of IDS and another on behalf of all individual appellants. We follow their form, consolidating the appeals for review and addressing the enumerations raised by IDS separately from those raised by the individual appellants. We find no merit in any of the appellants' contentions, and we affirm the judgment.

Construed to support the verdict, the evidence presented at trial showed that the project in issue began when Vijay located property for sale in south Georgia. He believed that the site, along I-75, would be perfect for tall billboards. He made a small down payment and sought other investors. The three individual appellants agreed to invest, and they formed IDS, a statutory close corporation. IDS then purchased the property. Vijay executed a stock subscription agreement, and he alone executed a personal guarantee of a note to the seller.

Matters soon became contentious between the parties, and IDS, at the direction of Arvind and Kothari, filed suit against Vijay, seeking collection on the note and acceleration of the stock subscription

commitment requiring Vijay to contribute up to $200,000 in capital. Vijay answered and counterclaimed, claiming that he was entitled to recover lost profits from IDS and that IDS had violated the Georgia corporation code sections protecting minority shareholders. During the pendency of that litigation, Kothari engaged in negotiations for the sale of a small portion of IDS's property in south Georgia to Flying J, Inc. for development of a truck stop. In early 1994, an agreement was reached between IDS and Flying J to sell 20 acres for more than $1 million. Vijay was not informed of this agreement, although the other shareholders were notified. He did not learn of the contract until after the trial had ended and was not paid a share of the proceeds of the sale. In fact, IDS deliberately concealed the contract from Vijay. Arvind testified at trial that the property was worth less than they had paid for it and that IDS had offered the property to Flying J but had been unable to sell it. In actuality, the sale of a portion of the property had been completed for a price more than IDS paid for the entire property. The judgment against Vijay in the first suit was set aside when Vijay learned of the fraud. He then brought this action.

A. *The Individual Appellants' Appeal.*

1. The Patels and Kothari contend that the trial court abused its discretion in allowing Vijay to introduce evidence of appellants' business relationships with other individuals. They argue that this evidence was "irrelevant, prejudicial, and inflammatory character evidence disguised as 'similar transaction' evidence." This contention refers to evidence presented by Vijay that Arvind and his wife and colleagues made it a practice to mistreat and defraud other Indian immigrants in their extensive and varied business dealings unrelated to the project with Vijay. Evidence was presented, for instance, that the individual appellants, through various corporations, own many motel properties, primarily in Georgia and Florida, and that they induced each of three Indian immigrants who testified to invest in leases for the motels by falsely inflating the motels' earnings and then took over the developments when the investors could not meet their rent or other obligations. Vijay also presented evidence that the individual appellants "watered" the stock of, and withheld payments due to, another Indian who was a minority shareholder in a close corporation controlled by the individual appellants, forcing him to sell his shares for a distressed price.

It is well established that the admissibility of evidence is a question for the court. *Schulz v. Sherwinter*, 227 Ga. App. 380, 382 (489 SE2d 348) (1997). In civil cases involving allegations of fraud, other transactions may be admissible to show motive or intent. To be admissible, the other transactions must be close in time and part of a common scheme, because "frequently the state of mind accompany-

ing the doing of an act is illustrated by other acts of a similar nature, done or proposed by the defendant in such a way as to indicate a general practice or course of conduct." (Citations and punctuation omitted.) *Troncalli v. Jones*, 237 Ga. App. 10, 16 (514 SE2d 478) (1999). Appellants maintain the trial court failed to determine outside the presence of the jury whether the incidents in issue were admissible and then compounded this error by delegating this responsibility to the jury. According to the individual appellants, the trial court simply allowed the witnesses to testify and then charged the jurors it was up to them to decide if the incidents presented were similar.

This contention is belied by the record. It is clear that the trial court considered this issue previously because appellants moved in limine to exclude this evidence, and the trial court read the written motions and heard the parties' arguments. The trial court considered the nature and purpose of the evidence and ruled on its admissibility outside the presence of the jury.

To be sure, this evidence was harmful to the appellants, but the trial court determined that the evidence was sufficiently similar to Vijay's allegations to warrant admitting it. We agree with the trial court that the evidence was sufficiently similar to be admissible. The individual appellants argue correctly that differences exist between the similar incidents and the actions complained of by Vijay. For example, some of the incidents involved landlord-tenant situations and not shareholder relationships. But they have many similarities as well. The victims were Indians who relied on Dr. Patel's status in the Indian community and trusted him with investments. Like Vijay, their trust was betrayed by Dr. Patel's misrepresentations, enabling Dr. Patel to gain control of the investors' capital for his own benefit and that of his corporations. And all the incidents occurred within three years of the fraud alleged by Vijay.

The trial court mitigated the potential harm by instructing the jury immediately to limit its consideration of the similar transactions to the issue of motive, intent, or course of conduct, a practice approved by the Supreme Court in *Webster v. Boyett*, 269 Ga. 191, 196 (2) (496 SE2d 459) (1998). Even in *Cooper Tire &c. Co. v. Crosby*, 273 Ga. 454 (543 SE2d 21) (2001), a product liability case relied upon by appellants, the Supreme Court emphasized the "sound discretion of the trial court, whose determination shall not be disturbed on appeal unless it amounts to an abuse of discretion. . . . Absent clear abuse, the trial courts' exercise of discretion in admitting or refusing to admit such evidence is entitled to deference, and should not be hamstrung by restrictive rulings." (Punctuation and footnote omitted.) Id. at 457. The trial court did not err in admitting these similar transactions.

2. Appellants contend the trial court erred in its charge by permitting the jury to award unlimited punitive damages based upon a "preponderance of the evidence" standard. The trial court charged the jury that "in order to find that the defendants acted with specific intent, that . . . must be proven from the evidence to your satisfaction by a preponderance of the evidence. That must be proven by a preponderance of the evidence to your satisfaction that they did act with the specific intent to cause harm."

OCGA § 51-12-5.1 (b) provides: "Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." The statute sets a cap of $250,000 for punitive damages but provides exceptions to that cap for product liability cases and cases in which a specific intent to harm is shown. Subsection (f) of the statute provides:

> In a tort case in which the cause of action does not arise from product liability, if it is found that the defendant acted, or failed to act, with the specific intent to cause harm, . . . there shall be no limitation regarding the amount which may be awarded as punitive damages against an active tortfeasor but such damages shall not be the liability of any defendant other than an active tort-feasor.

Appellants argue that the evidentiary standard set forth in subsection (b) for proving that punitive damages are appropriate, requiring clear and convincing evidence, also applies to subsection (f), to show the specific intent to harm necessary to lift the monetary cap. We do not agree.

The trial court relied upon *Time Warner Entertainment Co. v. Six Flags Over Ga.*, 245 Ga. App. 334 (537 SE2d 397) (2000), vacated on other grounds, 534 U. S. 801 (122 SC 24, 151 LE2d 1) (2001), in support of its charge. Appellants maintain this reliance was based upon a mistaken reading of *Time Warner*.

We find no support in *Time Warner* for either standard of proof; it simply does not address that issue. In *Time Warner*, as here, the trial court charged the jury that liability for punitive damages must be determined by clear and convincing evidence. But in *Time Warner*, the issue presented was different factually: The appellants argued that the trial court should also have charged the jury on the standard of proof for the separate finding that defendants acted with specific intent to cause harm, which they maintained was clear and convincing evidence. This court held that a second charge was unnecessary.

> Appellants have cited no authority, and we have found none, requiring the court to give such a charge. The trial court properly charged the jury on the law pertinent to awarding punitive damages under OCGA § 51-12-5.1 (b), including the requisite "clear and convincing evidence" burden of proof, and whether appellants acted with specific intent to cause harm. We find no error.

Id. at 356 (6) (b). Contrary to appellants' argument, we do not read *Time Warner* as holding that the burden of proof required to lift the monetary cap is clear and convincing evidence. Instead, we read it simply as holding that because the trial court had already charged the jury it must use the clear and convincing standard to determine liability for punitive damages, it was not necessary to charge the jury again.

The statute itself is silent as to the burden of proof required to show specific intent to harm, and appellants have cited no other authority for their contention that clear and convincing evidence is required. At common law, the standard for determining liability for punitive damages was preponderance of the evidence, with the amount awarded left to the enlightened conscience of the jury. OCGA § 51-12-5.1 changed this burden of proof to clear and convincing evidence. *Southern Gen. Ins. Co. v. Holt*, 200 Ga. App. 759, 772 (409 SE2d 852) (1991) (Carley, J., concurring in part and dissenting in part), rev'd in part on other grounds, 262 Ga. 267 (416 SE2d 274) (1992).

> [A] civil statute which is in derogation of common law must be strictly construed or limited strictly to the meaning of the language employed and not extended beyond plain and explicit terms. It is not a question of the burden placed on the parties to the litigation, but a question of the relationship between the common law and the law after the statute's passage.

(Citations and punctuation omitted.) *Denton v. Browns Mill Dev. Co.*, 275 Ga. 2, 4, n. 1 (561 SE2d 431) (2002).

OCGA § 51-12-5.1 is in derogation of the common law, and it must be strictly construed. Because in subsection (f) the statute does not specify that a clear and convincing standard must be used in determining whether a tortfeasor acted with specific intent to harm, that subsection is governed by the common law standard: preponderance of the evidence. If the General Assembly had wished to impose the stricter standard of proof in that subsection it could have done so explicitly, as it did in subsection (b). We must presume "that the leg-

islature did not intend to effect a greater change than is clearly apparent either by express declaration or by necessary implication." (Citations and punctuation omitted.) *C. W. Matthews Contracting Co. v. Capital Ford Truck Sales*, 149 Ga. App. 354, 356 (254 SE2d 426) (1979). Our reading of *Time Warner* therefore is in harmony with recognized principles of statutory construction. Because *Time Warner* cannot be read to require a clear and convincing standard of proof for subsection (f) of the statute, we find that the trial court did not err in its reliance on the case or in its charge on this issue.

3. The individual appellants assert that Vijay's claims for fraud and breach of fiduciary duty were barred by the statute of limitation and that the trial court erred in denying their motions for directed verdict and new trial on those claims.[1] Vijay's claims are for injury to personalty, and the applicable statute of limitation is four years. OCGA § 9-3-31. When the injury to personalty is economic loss, the statute of limitation does not begin to run until the loss is certain and not speculative. *Hardaway Co. v. Parsons, Brinckerhoff, Quade &c.*, 267 Ga. 424, 427-429 (1) (479 SE2d 727) (1997). Vijay could not have brought an action to recover for these injuries before the losses became definite, which was after 1992.

The complaint was filed on May 31, 1996. Vijay sought damages arising from his share of the Flying J contract proceeds distributed in 1995 ($142,000), his share of sign rental income from 1996 to 2001 ($45,306), and his advances or loans to IDS in 1994 and 1995 over and above his pro rata share of IDS's capital ($22,250). These claims total $209,556, the precise amount awarded by the jury in compensatory damages. It is therefore apparent that the jury considered only items of compensatory damages accruing within four years of filing the complaint.

B. *The Appeal of IDS.*

4. IDS contends that the trial court erred in denying its motions for directed verdict and j.n.o.v. on its claim against Vijay on the note, commitment agreement, and stock subscription agreement. IDS bases its entire argument on the fact that Vijay made an admission in judicio in the prior action that these documents were enforceable.

In the prior action, Vijay's counsel announced that "we're going to take the position the commitment and the promissory note are enforceable, that the jury has to determine how much is due under those, but they are enforceable." This pronouncement was read into the record at the trial of the present action. IDS maintains that this was an admission in judicio and that because Vijay never withdrew or rebutted it in the second trial it was binding on him. *Versico, Inc. v.*

---

[1] Vijay's award of punitive damages rests on these claims as well.

*Engineered Fabrics Corp.*, 238 Ga. App. 837, 839 (520 SE2d 505) (1999). A promissory note is an unconditional contract to pay, and parol evidence cannot be admitted to alter its terms. *Brooks v. McCorkle*, 174 Ga. App. 132, 133 (329 SE2d 214) (1985). IDS argues that because Vijay, the maker, admitted execution, a prima facie case was proved and the burden was on Vijay to plead and prove an affirmative defense, id., which he did not do. We do not agree.

First, Vijay did present evidence that he owed nothing under the note and agreements. The note was in the amount of $35,000, and Vijay introduced evidence showing that he had invested $38,500 in the corporation. The subscription agreement required IDS to comply with specific procedural requirements to collect additional capital contributions. Vijay introduced evidence showing that IDS did not follow that procedure to obtain $200,000 from each shareholder and that the other shareholders' contributions to the corporation were carried on the corporate books as loans to the corporation. Yet IDS sued Vijay on the stock subscription in the prior suit.

Second, Vijay's admission that he executed the note means only that he assumed the burden of proof regarding the amount due, if any. *Harrison v. Martin*, 213 Ga. App. 337, 341 (1) (444 SE2d 618) (1994) (full concurrence as to Division 1). Vijay introduced evidence showing that nothing was due from him under the instruments.

Third, the alleged admission was made in the first trial, and IDS was not entitled to rely on it. Issue preclusion based upon admissions in judicio is based upon the equitable doctrine of estoppel. OCGA § 24-4-24 (a), (b) (7).

> Since the whole doctrine of estoppel is a creature of equity and governed by equitable principles, it necessarily follows that the party who claims the benefit of an estoppel must not only have been free from fraud in the transaction, but must have acted with good faith and reasonable diligence; otherwise no equity will arise in his favor.

(Citations and punctuation omitted.) *Bachrodt Realty Corp. v. Walker*, 237 Ga. 696, 697 (229 SE2d 455) (1976).

Vijay presented proof that his counsel's statement was made in the first suit in reliance upon fraudulent representations made by the appellants. A party may not be held to a stipulation that is the product of fraud. See *White v. State*, 153 Ga. App. 808, 809 (266 SE2d 528) (1980). Moreover, the previous judgment was set aside because of appellants' fraud, and the order setting aside the judgment acknowledged that appellants' fraud had affected Vijay's trial strategy.

Finally, although generally a party may take advantage of

admissions of the other party, the rule applies only to statements of fact, not to opinions or legal conclusions. *Mountain Bound v. Alliant FoodService*, 242 Ga. App. 557, 558 (2) (530 SE2d 272) (2000). And Vijay's counsel's "admission" that the documents were enforceable was a legal opinion, not a fact. The trial court did not err in denying IDS's motions for a directed verdict and j.n.o.v.

5. IDS complains that it was "fundamentally unfair" for the trial court to exclude damaging impeachment evidence against Vijay when it had allowed Vijay to introduce the similar incidents evidence, which "maligned" the appellants. This refers to evidence that Vijay misled the jury as to the reason he had not obtained his CPA license. Vijay testified that he had not done so because of the prior judgment taken against him by IDS. IDS sought to introduce impeachment evidence on this issue by questioning Vijay about prior DUI and drug offenses. Although the trial court initially indicated it was "inclined" to allow this evidence, the court later changed its stated intention and refused to admit it.

But a fundamental difference exists between the similar transaction evidence presented by Vijay and that sought to be admitted by IDS. The former was essential to prove Vijay's claim of bad faith by showing a pattern of similar behavior. The latter evidence was simply not relevant to the issues at trial. It also appears that IDS itself deliberately raised an irrelevant issue when it questioned Vijay during cross-examination about whether he had held himself out as a CPA. This had nothing to do with the issues being tried, but it did create an opportunity to impeach Vijay. "[A] witness may not be impeached with regard to a matter irrelevant to the issues being tried. A witness' possible lack of credibility concerning matters otherwise irrelevant to any issue in dispute does not thereby become material to the case as an issue of impeachment. [Cits.]" *Goss v. Total Chipping*, 220 Ga. App. 643, 645 (2) (b) (469 SE2d 855) (1996). "Admission of evidence is committed to the sound discretion of the trial court, whose determination shall not be disturbed on appeal unless it amounts to an abuse of discretion." (Citations and punctuation omitted.) *Kohl v. Tirado*, 256 Ga. App. 681, 684 (2) (c) (569 SE2d 576) (2002). Under these circumstances, the trial court did not abuse its discretion by refusing to allow the introduction of the impeaching evidence.

*Judgment affirmed. Ruffin, P. J., and Miller, J., concur.*

DECIDED JUNE 17, 2003 —
RECONSIDERATION DENIED JULY 8, 2003 —

*Cohen, Cooper & Estep, Steven J. Estep, William A. Turner, Jr.,* for Kothari.

*Helms & Helms, Jack J. Helms, Jr., Bodker, Ramsey & Andrews, Stephen C. Andrews,* for Arvind Patel et al.

*Caldwell & Watson, Wade H. Watson III, Robert S. Carlson, Michael S. Bennett, Sr.,* for Vijay Patel.